## CHAPMAN

v.

### DURKIN, Secretary of Labor.
No. 14694.

United States Court of Appeals
Fifth Circuit.

June 30, 1954.

Rehearing Denied Aug. 2, 1954.

Claude L. Gray, Orlando, Fla., James Hardin Peterson, Lakeland, Fla., Dorothea Watson, Orlando, Fla., for appellant.

Stuart Rothman, Sol. U. S. Dept. of Labor, Bessie Margolin, Asst. Sol., U. S. Dept. of Labor, Washington, D. C., Joseph M. Stone, Attorney, United States Department of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., Birmingham, Ala., for appellee.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

The question presented by this appeal is, was the court below correct in holding that certain of appellant's employees were not exempt from the provisions of the Fair Labor Standards Act, § 213(a) (6), called the Act.[1]

Appellant maintains an office, and a yard with fruit bins, a garage for the upkeep and repair of his trucks, trailers and other machinery, in the City of Orlando, Florida, from which all of its operations are carried on. His business was known to the industry as "bird dog" operations, that is, he purchased fruit unfit for packing and sale in its original state, and sold the same to canning factories. His sources were three in number, (1) fruit left by producers on the trees as unfit for packing, (2) packing plants, and (3) purchases from small operators who delivered the fruit at appellant's place of business in Orlando.

In the first category he took title to the fruit on the trees, allowing it to remain there until sufficiently ripe for the market; in the second, culls were purchased at the packing plants; and in the third, as stated, small purchases were made at his yard and mixed indiscriminately. All labor, including gathering from the trees and transporting to market, repairs and maintenance of his trucks and trailers, loading into and from his bins, office work, etc., was performed

---

1. Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S.C. 201 et seq., as amended in 1949, c. 736, 63 Stat. 910, 29 U.S.C. Supp. V, § 201 et seq.

by appellant's own employees. The gatherers loaded the fruit into trailers, which were picked up by tractors at designated points in or near the groves. The court below held the gatherers exempt from the Act as agricultural workers, but found all other employees protected by the Fair Labor Standards Act. There was no cross-appeal.

The issue turns upon the proper application of Section 3(f) of the Act, to wit:

" 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 15(g) of the Agricultural Marketing Act, as amended), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) *performed by a farmer or on a farm* as an incident to or in conjunction with such farming operations, *including* preparation for market, *delivery to storage or to market or to carriers for transportation to market.*" (Emphasis added.)

It is not contended that appellant was a farmer, but that the work performed by his employees was part of and essential to the growing and producing of fruit, (which concededly is exempt under the above quoted meaning of agriculture) as well as its "delivery to storage or to market x x x." However, it seems clear that his business of buying, transporting and selling citrus fruit to canners, about 60% of which is purchased on the trees, and the rest from the other two sources, was not farming, yet he seeks to avail himself of the benefits accruing to a farmer, or one engaged in agriculture.

Appellant relies rather strongly upon the cases of McComb v. Consolidated Fisheries Co., 3 Cir., 174 F.2d 74 and Waller v. Humphreys, 133 F.2d 193, the latter by this Court. Those cases involved another favored type of industry, curing and packing of fish. There the workers were all employees of the persons engaged in that particular industry, in the performance of their duties essential thereto; while in the present case, appellant seeks the same benefits from a business which, in the handling of manufactured merchandise, would be known as a dealer or distributor of the product of others, save the one feature of reducing in this case a part of the fruit to possession for sale, to wit: the gathering of it from the groves. Approximately 39% comes from the other two sources, canneries and small owners.

Undoubtedly a wider latitude should be accorded to a fruit grower engaged in this type of agriculture, whose employees, in consummation of the operations of producing, hauled the fruit either to bins on farms or to the market for sale. See Chester C. Fosgate Co. v. U. S., 5 Cir., 125 F.2d 775; Lake Region Packing Ass'n v. U. S., 5 Cir., 146 F.2d 157; N. L. R. B. v. Edinburg Citrus Ass'n, 5 Cir., 147 F.2d 353; and N. L. R. B. v. John W. Campbell, Inc., 5 Cir., 159 F.2d 184.

In Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672, the Supreme Court had under consideration the question of whether employees of a non-profit irrigation company, wholly owned by the farmers to whom it supplied water, were engaged in agriculture. It was held that, while the supplying of water for irrigation constituted a phase in the producing of goods by farmers for commerce, those employees were not excluded from the protection of the Fair Labor Standards Act since they were not farmers, but delivered the water at gates where it was taken over by others actually doing the work "on a farm".

"As can be readily seen, this definition" (quoted above) "has two distinct branches. First, there is the primary meaning. Agriculture includes farming in all its branches. Certain specific practices such as cultivation and tillage of the soil,

dairying, etc., are listed as being included in this primary meaning. Second, there is the broader meaning. Agriculture is defined to include things other than farming as so illustrated. It includes any practices, whether or not themselves farming practices, which are performed either *by a farmer or on a farm,* incidently to or in conjunction with 'such' farming operations.

"Dealing with these two branches of the definition in order, it is clear, first, that the occupation in which the company's employees are engaged is not farming. The company owns no farms and raises no crops. Irrigation, strictly defined— that is the actual watering of the soil—may no doubt be called farming. And the work of the farmers in seeing to it that the water released from the company's ditches is properly distributed to the growing plants undoubtedly is included in farming as being part of the process of cultivating and tilling the soil. *But the significant fact in this case is that this work is not done by the company's employees.* There is a clear and definite division of function. The ditch company carries the water in its own canals to the lands of the farmers. When a farmer desires water so that he can irrigate his fields he notifies the company. Its employees then operate the headgates, which are located, on the company's canals and which the farmers are forbidden to operate, so that the appropriate quantity of water can pass out of the company's canals and off the company's land into the farmer's irrigation ditches. The responsibility of the company's employees ceases when they so release the water. The water is supplied to the farmer at the headgates and he takes it over there and uses it, in his own laterals, as he sees fit, to irrigate his crops.

"The ditch company, then, is not engaged in cultivating or tilling the soil or in growing any agricultural commodity. It is contended, however, that it is nevertheless engaged in farming because of the use, in the definition, of the words 'production * * * of any agricultural * * * commodities' in addition to the words cultivation, tillage, harvesting, etc. Since produce is defined in § 3(j) of the Act so as to include, 'for the purposes of this Act,' any occupation necessary to production, it is argued that production of agricultural commodities includes any occupation necessary to the production of agricultural commodities. It is thus argued that in the case of agriculture, as distinguished from other exemptions, Congress did provide that the exemption should include not only the occupation named but also all of those other occupations whose work is necessary to it.

"If Congress intended to convey that meaning by using the word production in the definition of agriculture we should, of course, give the definition its intended scope. But we do not 'make a fortress out of the dictionary.' And we have, therefore, consistently refused to pervert the process of interpretation by mechanically applying definitions in unintended contexts. Lawson v. Suwanee Fruit & S. S. Co., 1949, 336 U.S. 198, 69 S.Ct. 503 [93 L.Ed. 611]; Atlantic Cleaners & Dyers v. United States, 1932, 286 U.S. 427, 52 S.Ct. 607, 76 L.Ed. 1204. In the present case, the legislative history confirms what a natural reading of the language of the agricultural exemption would indicate —the word production was not there used in the artificial and special sense in which it was defined in § 3(j). Certainly, if it were meant in that sense, it would make surplusage of the remainder of the carefully wrought definition. And it would hardly have been innocuously placed among such specific terms as

'cultivation,' 'tillage,' 'growing,' and 'harvesting.'" 337 U.S. 762, 69 S. Ct. 1278, et seq. (Emphasis supplied by the writer.)

The work of gathering the fruit and loading it into trailers at the groves in the present case, was done, of course, on the farm, as an essential part of producing for the market, and clearly fell within the express terms of the Act; but the hauling from the farm by appellant who was not a farmer or producer in agriculture, as required by the law, cannot be said to be work "performed by a farmer or on a farm * * *" under the above quoted definition of agriculture. It is believed that references in quotations by appellant from the Congressional Record as to what happened during consideration of the bills that finally culminated in the Fair Labor Standards Act are too indefinite and inconclusive to merit comment.

The judgment appealed from is Affirmed.