W. Willard WIRTZ, Secretary of Labor,
United States Department of Labor,
Appellant,

v.

OSCEOLA FARMS COMPANY,
Appellee.

No. 22687.

United States Court of Appeals
Fifth Circuit.

Jan. 27, 1967.

Bessie Margolin, Assoc. Sol., Robert E. Nagle, Atty., Dept. of Labor, Charles Donahue, Sol. of Labor, William H. Horkan, Atty., Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., for appellant.

P. D. Thomson, Paul & Sams, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and BROWN, and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge.

This case presents questions of exemptions under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Osceola Farms Company filed suit for a declaratory judgment to establish the applicability of various exemptions to its employees. The Secretary of Labor counterclaimed under § 17 of the Act, seeking recovery of minimum wages allegedly unpaid and overtime compensation (both for a period beginning February 10, 1962) and an injunction against alleged violations of the Act.

From February, 1962, to April, 1964, Osceola engaged in Palm Beach County, Florida, in planting, growing, cutting, preparing for transportation, transporting, and milling sugar cane into raw sugar. It owned or leased approximately 4,000 acres of land on which it grew sugar cane. Its employees cultivated, grew and harvested the cane and transported it to Osceola's mill for grinding and conversion into raw sugar. Since April, 1964, it has discontinued these activities as owned or leased land and has maintained only a small 10-acre farm

adjacent to its mill for experimental purposes.

Osceola's mill is located approximately two miles from the nearest public road. An office and an equipment repair shop are within 200 yards of the mill. A large warehouse for sugar was added in the immediate mill area in 1963.

Milling is the first processing of sugar cane, and as carried on by Osceola involves grinding and pressing the cane and processing the juice into raw sugar, sold to sugar refineries (substantial quantities thereof in interstate commerce). Blackstrap molasses and bagasse also are products of the milling process.

During the entire period covered by this action Osceola entered into contracts for purchase of sugar cane grown by independent growers in the same county, covering from as few as 258 acres in the 1961–62 crop season to as many as 17,525 acres in the 1964–65 crop season. Thereunder the independent growers agreed to plant, cultivate, grow and produce such amounts of cane as permitted by applicable regulations of the United States Department of Agriculture issued under the Sugar Act of 1948 [7 U.S.C.A. § 1100 et seq.]. Employees of Osceola cut the cane in the fields of the independent growers, and the labor and equipment costs are assessed to the grower. First the Osceola workers burn the fields, usually at noon or late afternoon. Beginning usually early the next morning they cut the cane by hand and lay it into "pile rows." Promptly after cutting of a field is finished, either that afternoon or the next morning, Osceola's loading machine picks up the cane, cuts it into lengths of about 24 inches, and by its conveyor dumps it into Osceola's wagons, drawn in the fields by Osceola's tractors. During the 1961–62 and 1962–63 crop seasons the wagons were drawn by Osceola's tractor directly to the mill (in some instances the fields are as much as 20 miles distant from the mill). During 1963–64 the wagons were taken directly to the mill in the same manner unless to do so they would be required to pass over a public highway; in such cases the wagons were taken to a portable loading station in the fields where the cane was loaded into Osceola's semi-trailer tractor trucks and carried to the mill.

Wagons towed to the mill by tractor are weighed unhitched and left in a yard and from there taken by Osceola's smaller tractor to the mill conveyor. The larger tractor returns to the field with an empty train of wagons. When cane is transported by semi-trailer tractor truck, the truck is weighed at the mill area, dumped, and taken back to the field.

Title to the cane of the independent growers passes to Osceola at the mill, and risk of loss or destruction prior to delivery at the mill is on the grower. Cost of transportation is paid by Osceola under United States Department of Agriculture regulations [7 C.F.R. § 873.18(4) (i)] if the extent of transport is 14.9 miles or less; beyond that Osceola can charge the grower by the mile at rates established by the government regulations.

Sugar cane is perishable. After being cut it must be taken promptly to the mill, and failure to do so will cause it to deteriorate or spoil. Osceola attempts to finish cutting and removing cane from a field within 72 hours after burning. The realizable sugar content in cane which has been burned begins to decline within a few hours after cutting.

The District Court held that all the classes of employees whose status is involved in this appeal are exempt from the minimum wage and overtime provisions of the Act under the "agriculture exemption," § 13(a) (6):

"SEC. 13. (a) The provisions of Sections 6 and 7 shall not apply with respect to— * * * (6) any employee employed in agriculture * * *."

Some truck drivers (Class I drivers, as categorized below) were exempted on the ground they are engaged in "harvesting," one of the operations defined by § 3(f) of

the Act [1] as included within the term "agriculture"; other truck drivers (Class II), flagmen, and agricultural equipment repairmen were held exempt as engaged in work necessary to "harvesting."

Because of the direction we give this case we consider also the applicability of § 7(c), the "processing exemption"; § 7(b) (3), the "seasonal industry exemption"; § 13(a) (22), the exemption for persons engaged in certain transportation of fruits and vegetables; and § 13(a) (10), relating to persons handling agricultural commodities "for market."

A. The "Agriculture Exemption"— § 13(a) (6)

The Secretary of Labor specifies as error the application of the "agriculture exemption" of § 13(a) (6) of the Act to four classes of employees: [1a]

(1) Drivers of tractors and semi-trailer tractor trucks hauling cane in its raw or natural state from the fields of the independent growers to the mill (Class I drivers), held exempt on the ground engaged in "harvesting"; (2) truck drivers transporting laborers employed by Osceola to and from the fields of the independent growers, and transporting meals from points outside Osceola's property to such laborers while working on the farms of the independent growers (Class II drivers); (3) flagmen who stop traffic at public roads for safe passage of vehicles hauling cane from fields to mill; (4) personnel who work in the repair shop on Osceola's equipment used in the fields of the independent growers.

The Secretary concedes that the equipment repair personnel are exempt under § 13(a) (6) except in weeks when they work at the repair shop, which is at the mill site, on equipment used in the fields of the independent growers. All employees whose status is before us on this appeal work under the supervision of Osceola's "agricultural department" (as opposed to the mill operation) and are on the payroll of that department.

1. Class I Drivers

■ The District Court held Class I drivers exempt from the minimum wage and overtime provisions of the Act under § 13(a) (6) [2] on the ground they are engaged in "harvesting," an operation described by § 3(f) as within the primary meaning of "agriculture." We hold the Class I drivers are not exempted by § 13(a) (6) when hauling cane from the fields of the independent growers to the mill.

The definition of agriculture in § 3(f) has two branches. Farmers Reservoir and Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949):

"As can be readily seen this definition has two distinct branches. First, there is the primary meaning. Agriculture includes farming in all its branches. Certain specific practices such as cultivation and tillage of the soil, dairying, etc., are listed as being included in this primary meaning. Second, there is the broader meaning. Agriculture is defined to include things other than farming as so illustrated. It includes

preparation for market, delivery to storage or to market or to carriers for transportation to market."

1. "SEC. 3. As used in this Act— * * * (f) "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 15(g) of the Agricultural Marketing Act, as amended), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including

1a. We are not called on to decide the application of the § 13(a) (6) exemption to Osceola's employees who, during the time Osceola was growing its own cane on owned or leased land, cultivated and cut that cane, or to those who transported it to the mill; the government concedes they are so exempt.

2. The Secretary concedes these drivers to be exempt under the overtime provisions of § 7(c), but claims they were subject to the minimum wage provisions.

any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidentally to or in conjunction with 'such' farming operations."

Bowie v. Gonzalez, 117 F.2d 11 (1st Cir., 1941) held that employees of a sugar grower-miller who assisted in delivery of sugar cane from the fields of independent growers to the mill were not exempt (117 F.2d at 19–20). This was reiterated in Calaf v. Gonzalez, 127 F.2d 934 (1st Cir., 1942). These cases should dispose of the issue of the same type of transportation carried on by Osceola's employees, except that there are differences of interpretation placed by the parties on the subsequent decision of the Supreme Court in Maneja v. Waialua Agricultural Co., 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040 (1955). The Supreme Court held employees engaged in transporting sugar cane from fields of the grower-miller to the mill of the grower-miller, and employees to and from the fields, were within the definition of agriculture in § 3(f), hence within the exemption of § 13(a)(6). As appears from both the majority and the minority opinions, Waialua did not rest on the primary meaning of § 3(f); the employer was a farmer engaged in farming its own land, and the activities took place within the confines of its plantation. No independent growers were involved. The activities of the employees were within the secondary meaning of § 3(f): "practices * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations". The Court recognized the holding of Bowie that transportation of sugar cane from the fields of independent growers to the mill was not included in the exemption, and pointed out it was inapposite [349 U.S. at 262, 75 S.Ct. at 719].

Calaf v. Gonzalez, supra, had held transportation from the employer's own farm to its physically separate mill to be non-exempt, as incident to milling rather than farming. In Waialua the Supreme Court noted [349 U.S. at 263, 75 S.Ct. at 724] that Calaf had left open

the possibility that transport workers might be exempt if the "heart of the transportation system and the situs of the employment of workers" were located on the farm, which was the situation in Waialua, where cane fields, transportation system and mill all were located on the plantation. It is not the situation here. The transportation work here is not work done on a farm, except to the extent the original movements in picking up loads are on farm property. The rest of each movement is off the farm (some on public highways) and at the mill site. With respect to work done by the Class I drivers in hauling cane of the independent growers, Osceola is not the "farmer" referred to in § 3(f). It has not been a farmer at all since April, 1964; before then it was a sugar miller and farmer engaged also in non-farm activity in transporting the crop of another farmer.

It is clear also that transportation of cane by Osceola from fields of independent growers to the mill is not within the primary meaning of § 3(f) as "harvesting." In its earlier decision in Waialua [216 F.2d 466 (9th Cir., 1954)] the Ninth Circuit had held transportation of cane and laborers within the primary meaning of § 3(f) as "harvesting." After the Supreme Court decision in Waialua the 9th Circuit pointed out in NLRB v. Olaa Sugar Co., 242 F.2d 714, 718 (9th Cir., 1957) that the Supreme Court had "carefully refrained from characterizing the transportation of the sugar cane as part of harvesting", and had instead treated it as coming within the secondary meaning of § 3(f). The Court in Olaa distinguished between hauling by the employer from its own fields and hauling from the fields of independent growers, exactly the distinction here contended for by the Secretary.

Transportation of fruit from farms of independent growers by employees of a fruit company was held not harvesting in Chapman v. Durkin, 214 F.2d 360 (5th Cir., 1954), cert. denied, 348 U.S. 897, 75 S.Ct. 218, 99 L.Ed. 704 and Fort Mason Fruit Co. v. Durkin, 214 F.2d 363

(5th Cir., 1954),[3] cert. denied, 348 U.S. 897, 75 S.Ct. 218, 99 L.Ed. 705.

The perishable nature of the cane is emphasized by appellee as indicating that hauling it to the mill is "harvesting." This was given great weight by the 9th Circuit in its *Waialua* opinion, and was considered by the Supreme Court in its opinion reversing. In Olaa the 9th Circuit declined to follow the emphasis on perishability it had set out in *Waialua* and in Holtville Alfalfa Mills, Inc. v. Wyatt, 230 F.2d 398 (9th Cir., 1955), and instead followed the Supreme Court's *Waialua* opinion.

Osceola contends this case is governed by the principle that the agricultural exemption is meant to embrace the whole field of agriculture, citing Waialua and its discussion of the legislative history. This is a statement of the problem, not of the answer; to initially characterize as "agriculture" the transportation activity here involved is to abdicate analysis. As *Waialua* states, "Nevertheless, no matter how broad the exemption, it was meant to apply only to agriculture and we are left with the problem of what is and what is not properly included within that term." [349 U.S. at 260, 75 S.Ct. at 723].

We conclude that in transporting cane of the independent growers the Class I drivers are exempt under neither primary nor secondary meaning of "agriculture."

## 2. Class II Drivers

■ These employees transport farm laborers employed by Osceola to and from the farms of the independent growers where the laborers burn the fields, cut and stack the cane and lay it into "pile rows" from where it is picked up by Osceola's loading machine. The Class II driv-

ers also bring meals from points off the farms and off Osceola's premises to these farm laborers where they are working.

What the laborers are doing is harvesting an agricultural commodity, preparing the fields for cutting cane and then cutting and stacking, preparatory to commencement of the transportation activity. That their activity is within the primary meaning of § 3(f) is not disputed.

The feeding of these workers at their places of work is a "practice[s] performed * * * on a farm * * * as an incident to or in connection with such farming operation." The transportation of necessary food to the on-the-farm site is incident to, or a part of, the on-the-job feeding arrangement and itself terminates on the farm. We conclude the drivers transporting food are within the exemption. In like manner the transporting of workers to and from the fields of the independent growers, and from one field to another, is incident to the harvesting activity.[4]

## 3. Flagmen

■ The Secretary contests any § 13(a) (6) exemption of the flagmen. They stop traffic at public roads for safe passage of the vehicles driven by the Class I truckdrivers hauling cane from fields of the independent growers. When Osceola was growing its own cane they flagged for the vehicles transporting it to the mill.

When flagging for movements of cane of the independent growers the flagmen are even more clearly outside the § 13(a) (6) exemption than the Class I drivers.

The exemption of the Class I drivers when transporting Osceola's own cane is not contested by the Secretary. However, he does contest exemption of the

---

3. The precise activity involved in these two cases subsequently was exempted by § 13(a) (22), but the statutory change did not alter the effect of the cases in delineating the scope of the agricultural exemption as to the activity involved prior to the adoption of § 13(a) (22).

4. We have concluded that employees who transport raw cane from farm to a mill off the farm are not exempt, while those who transport food and laborers onto the farm are exempt. The movement of cane from farm to mill is transportation of an agricultural commodity the harvesting of which has been completed; movement of food and workers to the fields has significance and purpose only in making it possible for the harvesting activity to take place.

flagmen who "flagged" those exempt drivers on such movements. In contrast to these drivers all work of the flagmen on such movements was done off the farm at public roads, their activity was a step removed from the actual physical operation of transport as carried on by the drivers, and they were removed from direct contact with the farm crop being transported. We hold that for such periods, the flagmen were not within the exemption of § 13(a) (6).

### 4. Equipment Repairmen

These repair personnel perform repairs on agricultural equipment owned by Osceola and utilized by it in its contracts with independent growers and (for periods where applicable) in connection with its own cane fields and the crops grown thereon. Some of the work was done in the fields, other at the repair shop in the mill area. During crop season the repairs were almost exclusively to the equipment used in loading and transporting the cane.

The Secretary now concedes that the repairmen working on agricultural equipment are exempt except in weeks in which they work at the repair shop on equipment which is at that time used in the fields of the independent growers. Such activity at the repair shop is not within the primary meaning of § 3(f) and it cannot fall within the secondary meaning since done neither by a farmer nor on a farm. We conclude the activity is outside the § 13(a) (6) exemption.

### B. The Processing Exemption— § 7(c)

This section provides an overtime exemption for prescribed processing activities.[5]

In this case the Secretary concedes, on the basis of prior interpretations by him, that the Class I drivers, who spend part of each trip weighing and unloading at the mill and picking up empties, are within this exemption; but he contends that the flagmen, agricultural repair personnel, and the Class II drivers are outside the exemption.

The exemption allowed by § 7(c) is for the "place of employment" where the processor is engaged in processing. Maneja v. Waialua, supra, 349 U.S. at 271, 75 S.Ct. 719. In Fleming v. Swift & Co., 41 F.Supp. 825, (N.D.Ill.) aff'd 131 F.2d 249 (7th Cir., 1942), the Court held "place of employment" to be a portion of a plant. We need not make so close a division here. It does not appear that either Class II drivers or flagmen perform any duties at the mill site where processing occurs, hence they are not exempt under § 7(c). Agricultural repair personnel perform part of their duties at the shop at the mill site, other repair work in the fields, but wherever done their primary duties are repair and care of equipment used in the fields and in transporting cane to the mill. That work is done at the site where processing is carried on does not make it part of processing. We conclude the repairmen are not exempt under § 7(c) when working on agricultural equipment at the mill site.

### C. The Seasonal Industry Exemption—§ 7(b) (3)

This section provides a limited exemption from the Act's overtime requirements in an industry found by the Secretary to be of seasonal nature.[6]

5. "Sec. 7(c): In the case of an employer engaged * * * in the processing of * * * sugarcane * * * into sugar (but not refined sugar) or into sirup, the provisions of subsection (a) of this section [requiring payment of time and one-half over forty hours] shall not apply to his employees in any place of employment where he is so engaged".

6. Sec. 7(b): "No employer shall be deemed to have violated subsection (a) of this sec-

tion by employing any employee for a workweek in excess of that specified in such subsection without paying the compensation for overtime employment prescribed therein if such employee is so employed—

　　*　　　*　　　*　　　*　　　*

(3) for a period or periods of not more than fourteen workweeks in the aggregate in any calendar year in any industry found by the Administrator to be of

The Secretary has determined the Florida sugar cane processing and milling industry to be "of a seasonal nature" and to include the following operations:

"The loading of sugar cane in the fields and its transportation to a sugar cane processing mill when performed by employees of the processor; the unloading of sugar cane at the mill; the processing of sugar cane into raw sugar, syrup and molasses; * * * and any operations necessary and incident to the foregoing, including the placing of these products in storage or transportation facilities on or near the premises". 16 Fed.Reg. 10807, as amended 26 Fed.Reg. 3304.

The Secretary concedes that Class I drivers and flagmen are employed in the industry as defined but denies that Class II drivers and agricultural repair personnel are included.

Loading and transportation to the mill (when done by employees of the processor, as here) and unloading, are within the defined industry, plus "any operations necessary and incident to the foregoing including the placing of these products in storage or transportation facilities at or near the premises." 26 Fed.Reg. 3304.

The repair of the mechanical equipment used in loading and transporting cane to the mill is "necessary and incident" to "loading" and "transportation to the mill." The agricultural equipment repair personnel are within the defined industry.

The boundary of the industry was drawn by the Secretary with loading of cane within the line and activities short of loading outside the line. The Class II drivers haul to and from the fields workers engaged in cutting and piling cane, and their meals. The function of these workers, and their feeding, clearly fall on the non-industry side of the line.

Osceola questions the power of the Secretary to establish exempt and non-exempt job classifications within a defined seasonal industry. That issue is not here presented. Three classifications —Class I drivers, flagmen and agricultural repair men—are within the industry and are exempt. The fourth classification—Class II drivers—have not been carved out of the industry by a process of classification but have never been within it.

As a prerequisite to claiming the partial exemption of § 7(b) (3) Osceola must show that it has met a condition of paying the affected employees overtime rates for hours in excess of 12 in any work day and 56 in any work week. It is entitled to offer such proof on remand, if it desires.

D. The § 13(a) (22) Exemption

This is an exemption for employees engaged in transportation or preparation for transportation of "fruits or vegetables." The District Court made no findings of fact whether sugar cane is a "fruit or vegetable" within the meaning of this section.

What is a fruit or vegetable depends in large degree on the context in which definition is sought. Experts here reached varying conclusions after considering such factors as purely botanical definition, use of the item, hardiness, method of cultivation, degree of processing or change in form required to utilize as food, perishability, whether grown on extensive or intensive scale, purpose for which grown (for raw consumption or for industrial processing).

Congress has indicated a distinction between sugar cane and "fruit or vegetable" for purposes of this Act. In § 7(c) Congress provided a complete overtime exemption for the "processing" of "sugar cane," but only a 14-week exemption for

a seasonal nature, and if such employee receives compensation for employment in excess of twelve hours in any workday, or for employment in excess of fifty-six hours in any workweek, as the case may be, at a rate not less than one

and one-half times the regular rate at which he is employed."
Sec. 3(h): " 'Industry' means a trade, business, industry, or branch thereof, or group of industries, in which individuals are gainfully employed".

the "first processing" of "perishable or seasonable fresh fruits and vegetables." All the sections relating to exemptions are *in pari materia* and must be construed together to present a consistent whole, if possible. Bowie v. Gonzalez, supra, 117 F.2d at 17. See also Stratton v. Farmers Produce Co., 134 F.2d 825 (8th Cir., 1943) where the enumeration in § 7(c) of handling and processing of poultry was held to indicate that handling or packing of poultry was not intended to be included in the more general classification set out in § 13(a) (10), "handling, packing * * * of agricultural or horticultural commodities for market". Both Waialua, supra, 349 U.S. at 267–269, 75 S.Ct. at 727, and Bowie, supra at 117 F.2d 19, held specific reference to the processing of sugar cane in § 7(c) precluded exemption of it under other sections where not specifically mentioned.

■ For purposes of § 13(a) (22), sugar cane is not a fruit or vegetable, and the exemption of that section has no application in this case.

E. The Area of Production Exemption—§ 13(a) (10)

■ This section exempts from minimum wage and overtime requirements:

"any individual employed within the area of production (as defined by the Secretary), engaged in handling, packing, storing, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products * * *."

Osceola contends it is applicable to the Class I drivers. We hold it is not.

The handling (etc.) must be "for market"; this requirement qualifies each of the activities preceding it in the statute. The exemption does not extend to handling, (etc), performed as here as a prelude to Osceola's processing of the commodity into a different product for marketing, unless the process is itself enumerated in § 13(a) (10); milling sugar cane is not one of those specifically

enumerated. This has been the administrative interpretation and that of the courts as well. 29 C.F.R. §§ 780.700, 78.715–.717; Wyatt v. Holtville Alfalfa Mills, 106 F.Supp. 624 (S.D.Cal.) remanded as to other employees and other exemptions; Cf. Stephens v. Cotton Producers Ass'n., 117 F.Supp. 517 (N.D. Ga.) aff'd sub nom. Johnston v. Farmers Mutual Exchange, 218 F.2d 588 (5th Cir., 1955), where the employee was not transporting for non-exempt processing by his employer but for sale to others.

The case is affirmed in part, reversed in part, and remanded for proceedings not inconsistent with this opinion.