Lynn MARTIN, Secretary of Labor,
United States Department of
Labor

v.

TILLER HELICOPTER SERVICES,
INC. and William J. Tiller, Sr.

Civ. A. No. C–88–357.

United States District Court,
S.D. Texas,
Corpus Christi Division.

Sept. 30, 1991.

Michael H. Olvera, U.S. Dept. of Labor, Dallas, Tex., for plaintiff.

Ben F. Foster, Jr., Foster, Bettac, Heller, San Antonio, Tex., for defendants.

## DECISION OF THE COURT

HEAD, District Judge.

This suit is brought by the Secretary of Labor, United States Department of Labor, to enjoin defendants from violating provisions of sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), and 215(a)(5); to restrain the withholding of payment of minimum wages and overtime compensation found by the Secretary to be due employees of defendants under the Act; and to collect back pay and liquidated damages. Trial was to the Court. Having considered the pleadings, evidence, and argument of the parties, the Court hereinafter renders its findings, conclusions, and decisions.

William J. Tiller, Sr. ("Tiller") farms and ranches approximately four thousand acres, through either leasehold or ownership, in South Texas. He also owns and operates Tiller Helicopter Services, Inc. ("Tiller Helicopter"), which is a large helicopter operation that provides cattle herding and aerial spraying services to Tiller's own as well as to other farmers' and ranchers' lands. Apparently, Tiller Helicopter grew out of Tiller's own use of helicopters on his lands, but the origin of the business is not important to this decision.

Tiller Helicopter owns and operates six or seven helicopters. Tiller Helicopter has a customer list of approximately 200, about 100 of whom were served the year before

trial. Most of the customers are in the south Texas region, but Tiller Helicopter serves customers as distant as Beaumont, Texas, and Marfa, Texas, near the Big Bend in west Texas. With respect to ranching, Tiller Helicopter uses helicopters to round up cattle over large acreages, such as the King Ranch, or on very brushy acreages where this work by horseback would prove inefficient. With respect to farming, the helicopters spray the fields with herbicides, insecticides, and fertilizers. The employees at issue are Tiller Helicopter employees who have farming and ranching duties on Tiller's own properties, and who also leave Tiller's premises and travel to other farms and ranches for Tiller Helicopter.

The daily activities of the employees begin at the headquarters of Tiller Helicopter on Tiller's farm. A helicopter is loaded onto a trailer, apparently by the pilot but not these employees. Fuel tanks and water tanks on trailers are filled. Chemicals (unmixed) are loaded onto the trailers, and the caravan of two to three vehicles is off to an independent grower's farm with trailers in tow. There the chemicals are mixed with the water from the tanks and loaded into the helicopter. Either the employees who filled the helicopter or other crew members begin to serve as flagmen, that is, markers at rows' ends to guide the helicopter pilot. After each spray pass, the flagmen move forty feet until the field is done. Then the crew either returns to Tiller Helicopter or goes directly to another farm. At the end of the day, the crew returns to Tiller Helicopter and flushes the tanks and cleans the helicopter. The crew members' other duties include cleaning the hangar and maintaining the trailers and, in certain instances, the helicopters. The Court is satisfied that no true mechanic's work is done by them on the helicopters.

■ Defendants contend that the employees are exempt from the overtime provisions of the FLSA as agricultural work-ers.[1] The burden of proving the applicability of such exemptions lies on the employer. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 86 S.Ct. 737, 749, 15 L.Ed.2d 694 (1966). The agricultural exemption applies to

> any employee employed in agriculture or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways not owned or operated for profit or operated on a share crop basis which are exclusively for supplies or storing of water for agricultural purposes.

29 U.S.C. § 213(b)(12). Agriculture is defined by statute as follows:

> Agriculture includes farming and all its branches and among other things includes the cultivation and tillage of the soil during the production, cultivation, growing, and harvesting of agricultural or horticultural commodities ..., the raising of livestock ... and any practices ... performed by a farmer or on a farm as an incident to or in conjunction with such farming operations including preparations for market, delivery to storage or to market, or to carriers for transportation to market.

29 U.S.C. § 203(f). Also pertinent to the case is the regulatory definition of cultivation:

> Cultivation and tillage of the soil includes all the operations necessary to prepare a suitable seedbed, eliminate weed growth, and improve the physical condition of the soil. Thus, grading or leveling of land or removing of rocks or other matter to prepare the ground for a proper seedbed or building terraces on farmland to check soil erosion are included. The application of water, fertilizer or limestone to farmland is included.

29 C.F.R. § 780.110.

■ The issues of exemption dominated trial of the case, and the exemption potential applies to various activities of the crew

---

**1.** Defendants earlier had asserted that the employees were exempt under the range production of livestock exemption. 29 U.S.C. § 213(a)(6). Plaintiff asserts in a post-trial brief that this claimed exemption fails because defen-dants did not pursue it at trial. Defendants did not pursue this issue in their post-trial brief and did not respond to plaintiff's assertion of abandonment. The Court will not consider this exemption.

members. The Secretary does not challenge that flaggers can be exempt, *Boyls v. Wirtz*, 352 F.2d 63 (5th Cir.1965), but does challenge defendants' assertion that travel times and other activities occurring off the farm of the independent grower are also exempt. The Secretary pursues a strict situs argument, and the defendants pursue a functional argument. *See Farmers Reservoir & Irr. Co. v. McComb*, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949), and *Maneja v. Waialua Agric. Co.*, 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040 (1955). In resolving this dispute, the Court considers the function of the employees, their activities, the locations of their work, and compares them with case law and regulation.

In applying fertilizer, pesticides, and insecticides at farms of independent growers, the central task of each employee is to go to a farm and there to conduct primary agricultural operations, *Farmers Reservoir & Irr. Co. v. McComb*, 69 S.Ct. at 1274, and specifically, they conduct cultivation activities. As noted earlier, cultivation includes all the operations necessary to eliminate weed growth and improve the physical condition of the soil. The application of herbicide is included to kill weed growth. The application of fertilizer is specifically included by regulation.

The Secretary takes the position that all work, to be exempt, must be accomplished on the farm site of the independent grower and that any activity occurring off the farm site is not exempt. This position excludes travel to and from Tiller Helicopter and excludes loading the trailers and fueling the tanks at Tiller Helicopter. In the Court's view, the Secretary's position would make the exemption meaningless and does not realistically honor the Congressional desire for an agricultural exemption.

■ The Court has found no cases directly in point. In interpreting another agricultural exemption, 29 U.S.C. § 213(a)(6), the Fifth Circuit held drivers of an independent contractor harvester transporting its employees to the fields of independent growers and taking them lunch were exempt during travel. *Wirtz v. Os-*

*ceola Farms Co.*, 372 F.2d 584 (5th Cir. 1967). In *Brennan v. Sugar Cane Growers Co-op. of Fla.*, 486 F.2d 1006 (5th Cir. 1973), cooks and camp attendants who never went to the productive farms were exempt. 29 U.S.C. § 213(b)(12). In *Boyls v. Wirtz*, the Fifth Circuit held that the agricultural exemption of 29 U.S.C. § 213(b)(12) did not apply to employees of a crop dusting service who "never" went to the fields, but did apply to those who did. In *Farmers Reservoir & Irr. Co. v. McComb*, the non-exempt employees never went to the fields.

■ Each of these cases stands for the proposition that while exemptions are to be narrowly construed, the court will not allow an unnecessarily technical definition to destroy the exemption. *Brennan* at 1011. In our case, Tiller employees are the functional equivalent to a farmer's own employees. They perform on-hands on-site work and could be working side by side with the farmer's own employees. It is obvious that facilities like Tiller's cannot be located next to every farm that its employees serve. To impose wage requirements as if they were so located is unrealistic and renders the interpretation of the Secretary also unrealistic.

The Court therefore rejects the Secretary's interpretation and concludes that Tiller Helicopter employees' travel time from Tiller Helicopter headquarters to its customers' farms is exempt from overtime wages. This same holding applies to the activities of the employees as they load trailers and tanks with the necessary implements and commodities that they take to the fields to perform their daily activities.

■ Other activities at the hangar, however, fall short of the exemption. Activities of repair and maintenance of the trailers and helicopters are not exempt. While a farmer's employee repairing a farmer's equipment on his farm or on another farm incident to that work would be exempt, work at the repair shop on equipment used in the fields of independent growers is not exempt. *Wirtz v. Osceola*, 372 F.2d at 584. Into this category of maintenance and repair the Court would include any type of

trailer maintenance or changing out of any type of equipment on the helicopter or its devices, together with any servicing of the helicopter. The Court does not include in the non-exempt status simple flushing of the tanks on the trailers. Cleaning of the helicopter, however, would be non-exempt work.

■ The defendants have the burden of establishing their entitlement to the exemption. If non-exempt work is performed during a week, the week's exemption is lost. 29 C.F.R. § 780.10. The defendants, because of the state of their records, have failed to establish any weeks during which the Court can find that the exemptions would apply. Indeed, it appears to the Court that the defendant's use of its employees in and around the hangar for general maintenance causes a loss of the exemption. Accordingly, on the state of this record the Court finds that even though the employees may have done much exempt work, the defendants have failed to meet their burden and the exemptions sought must be disallowed.

■ Plaintiffs alleged that defendants violated record-keeping regulations by failing to keep a record of the actual hours worked, failing to keep a record of the hourly rate of pay for all weeks when overtime was paid, and failing to keep accurate records of all hours worked. 29 U.S.C. §§ 211(c) and 215(a)(5); 29 C.F.R. § 516. Defendants acknowledged that, because of programming irregularities, their computer records do not reflect actual hours worked or the correct hourly rate. Defendants asserted that the compliance officer was made aware of discrepancies between the rates agreed on by Tiller and the employee and the rate shown on the computer printouts. Defendants contended that time cards existed which accurately reflected the hours worked by each employee, but produced neither the cards nor summaries of the cards to show the invalidity of the Secretary's reliance on the computer records. The Court is sympathetic to the compliance officer's lack of reliance on computer printouts acknowledged by the defendants to be faulty.

Tiller Helicopter employees Gonzales and Solis did not recall recording their time worked. The time cards for Gonzales were either lost or destroyed during the Secretary's investigation. Employee Davila testified that employees either punched a time clock or had other persons recording their time. Judy Tiller and Tiller both testified that time records were kept on each employee. The Court finds that records were kept, but in a fashion inadequate to advise the Secretary of the activities of the employees. The Court finds that, on the evidence and testimony produced at trial, defendants violated the Secretary's regulations requiring accurate records of time worked and maintenance of those records for a certain period. 29 C.F.R. §§ 516, *et seq.*

■ Plaintiffs allege that liquidated damages are warranted. 29 U.S.C. § 216(c). Defendants bear the burden of proof to avoid application of liquidated damages by showing that defendants acted in good faith and had reasonable grounds to believe that the acts were not violations of the FLSA. 29 U.S.C. § 260. The good faith standard is a subjective one that requires the employer to have an honest intention to comply with the FLSA. *Williams v. Tri–County Growers, Inc.,* 747 F.2d 121 (3d Cir.1984).

■ Defendants argue that the Secretary waived liquidated damages by failing to request them by pleading 29 U.S.C. § 216(c) in its complaint, citing *Dole v. Scott–Rice of Texas, Inc.,* 731 F.Supp. 776 (N.D.Tex.1990), and *Brock v. Superior Care, Inc.,* 840 F.2d 1054 (2d Cir.1988). Plaintiff contends that these cases are inapposite and that Tiller had fair notice of the liquidated damages claim by its inclusion in the Joint Pretrial Order. The Court finds that plaintiff's failure to pursue trial by jury on this issue upon which it must obtain a verdict foregoes the power of the Court to impose any liquidated damages. It is plaintiff's burden to obtain the verdict from the jury when liquidated damages are sought. *Dole v. Scott–Rice of Texas, Inc., supra.*

Plaintiff alleges that, because these violations were similar to previous violations, these violations are willful. The standard for willfulness requires that the employer know or show reckless disregard whether his payment plans violate the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988).

■ The Court finds that the Secretary has not met her burden. The Secretary relies on a previous investigation. Evidence of such an investigation can be good evidence of a willful violation. But here, the Court was not presented with any records of that case and does not understand the issues of that case to be sufficiently similar to this case to warrant the findings required by the *McLaughlin* case. The Court finds here that the defendants, after an FLSA investigation, began to keep records and paid overtime and minimum wages, albeit improperly. The Court also finds that the issue of exemption was not discussed with the employer and could have been raised by the Secretary at the first meeting. The Court can find no intentional or reckless conduct has been demonstrated. Because the violations were not willful, a two-year statute of limitations is appropriate, rather than a three-year statute. 29 U.S.C. § 255(a).

The Secretary compiled a summary of backwages due the employees. The Court finds that those summaries used the proper procedures for computing backwages, 29 C.F.R. §§ 778.108 *et seq.*, but that those summaries relied in part on certain assumptions that are not accurate. The first assumption is that a three-year statute of limitations applies. The Court has found that a two-year limitation is appropriate. The Secretary is ordered to recalculate the backwages using December 21, 1986, as a starting point.

The second assumption was that the appropriate measure of Gonzales's hours was the use of Davila's hours. The Court finds this comparison to be unsupported. The testimony from all parties except Gonzales showed that Gonzales did not work as many hours as Davila. Gonzales's testimony is full of exaggeration and is not credible. None support his statement that he worked 80–85 hours per week when Davila only rarely worked that many hours. By the Court's calculation, Gonzales worked slightly less than 80 percent of the hours that Davila worked during this time. The Court finds that the 80 percent ratio is more reasonable than a 100 percent ratio. The Secretary is ordered to recalculate the backwages owed to Gonzales, using 80 percent of Davila's hours.

The Court finds that the Secretary was justified in using a nine-hour day estimate for Solis. Based on his estimate that he worked eight to ten hours per day, five days per week, it is an estimation that is credible and not seriously contested.

■ Defendants move for reconsideration of their motion for sanctions against plaintiff. Defendants contend that the Secretary's inclusion of Martha J. Tiller and W.J. Tiller, Jr. in the original complaint was not well-grounded in fact nor warranted by existing law. Fed.R.Civ.P. 11. Defendants contend that any reasonable inquiry into the facts would have notified plaintiff that neither person was an employer under the FLSA. 29 U.S.C. § 203(e).

The Court stands by its conclusion that plaintiff was warranted in originally including the additional defendants, and dismissed them when plaintiff discovered that they were not employers. Officers of corporations are routinely held to be employers within the meaning of the FLSA. *Marchak v. Observer Publications, Inc.*, 493 F.Supp. 278 (D.R.I.1980); *see also Falk v. Brennan*, 414 U.S. 190, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973). Documents filed by Tiller Helicopter with the Texas Secretary of State showed that Martha Tiller was an incorporator and officer and that William J. Tiller, Jr. was the registered agent (D.E. # 29, Ex. 1). Defendants have shown no prejudice from the inclusion and dismissal of these defendants. The Court denies defendants' motion to reconsider the denial of sanctions.

SUMMARY:

This Court ORDERS that an injunction issue to restrain Tiller and Tiller Helicopter from violating the minimum wage, overtime, and recordkeeping provisions of the FLSA. 29 U.S.C. § 217.

This Court ORDERS that an injunction issue to restrain Tiller from withholding backwages due employees. This injunction is held in abeyance until the amount of those backwages is properly calculated. This Court ORDERS the Secretary to recalculate in accord with the Court's rulings in this case the amount of backwages due the employees. This Court ORDERS the Secretary to file with the Court and serve defendants with such recalculation within twenty (20) days of this order. Defendants shall have twenty (20) days to respond to those recalculations.

This Court denies the Secretary's requested relief of liquidated damages. This Court denies the defendants' request to reconsider their motion for sanctions.

ORDERED.