[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11995

_____

D.C. Docket No. 8:17-cv-1753-MSS-AEP


JOSE RAMIREZ,
JOEL SANTANA,

                                                    Plaintiffs-Appellees,

versus

STATEWIDE HARVESTING & HAULING, LLC,

                                                    Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 21, 2021)

Before WILLIAM PRYOR, Chief Judge, LUCK, Circuit Judge, and MARKS,[*]
District Judge.

WILLIAM PRYOR, Chief Judge:

_____

[*] Honorable Emily Coody Marks, Chief United States District Judge for the Middle
District of Alabama, sitting by designation.

This appeal involves the agriculture exemption from the overtime-compensation requirements in the Fair Labor Standards Act. 29 U.S.C. § 213(b)(12). A fruit-harvesting company required its crew leaders to transport field workers between company-provided housing and a grocery store, laundromat, and bank every week. Two crew leaders sued the company for failure to pay them overtime compensation for the trips. Because we agree with the district court that these activities do not fall within the agriculture exemption, we affirm the judgment in favor of the crew leaders.

## I. BACKGROUND

Statewide Harvesting & Hauling, LLC, harvests fruit from about 1,500 fields for multiple farmers in Florida and hauls that fruit to various packinghouses or processing plants. It does not own any of the land it harvests. For the harvest seasons between 2014 and 2017, Statewide employed mostly temporary foreign guest workers as its seasonal harvest workers, through the federal H-2A program. *See* 20 C.F.R. §§ 655.100 *et seq.*

The H-2A program requires a labor contractor to provide workers with housing. *Id.* § 655.122(d)(1). It also requires a labor contractor to provide harvest workers with either three meals a day or "free and convenient cooking and kitchen facilities." *Id.* § 655.122(g). And the contractor must provide access to other basic housing amenities including laundry facilities. *Id.* § 655.122(d)(1)(i).

2

Statewide housed its harvest workers in three cities. The traveling distance from the accommodations to the fields varied: some fields were across the street from the accommodations, and others were up to two hours away. It chose to provide its harvest workers with cooking facilities instead of meals and with transportation from the accommodations to a grocery store, laundromat, and bank. Statewide also contractually agreed to provide the grocery store and bank transportation to the harvest workers.

Statewide employed Jose Ramirez and Joel Santana as crew leaders responsible for supervising the field workers during the harvest seasons. Ramirez and Santana also drove the workers to and from the accommodations and the grocery store, laundromat, and bank. These weekly trips lasted approximately four hours. Between 2014 and 2017, Ramirez and Santana worked anywhere from three-and-a-half to over 80 hours a week. Neither crew leader received any overtime compensation when he worked over 40 hours a week.

In 2017, Ramirez and Santana sued Statewide under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, for unpaid overtime compensation for the basic-necessities driving trips. They alleged that Statewide willfully refused to pay them overtime wages as required under the Act and sought damages. Statewide did not deny that Ramirez and Santana were covered by the Act, but it maintained that

3

all of their employment activities fell under the exemption from the overtime requirements for agricultural work. *Id.* § 213(b)(12).

Both sides moved for summary judgment. The district court referred the motions to a magistrate judge, who concluded that Statewide was not a farmer, the driving trips were not actually performed on a farm, and the trips were not a minor part of their work—all reasons why the exemption would not apply. But the magistrate judge decided that the agriculture exemption includes "work activities performed neither by a farmer nor on a farm when those work activities are incidental to primary agricultural activities performed on a farm." Because Statewide provided the transportation to comply with H-2A requirements for its harvest workers, the magistrate judge recommended concluding that the transportation fell under the exemption.

The district court rejected the magistrate judge's recommendation. It explained that the activities must be performed by a farmer or on a farm to fall under the exemption. Because Statewide did not object to the magistrate judge's conclusion that it is not a farmer or that the work was minor, and the activities at issue occurred wholly off a farm, the exemption did not apply. It denied Statewide's motion and it granted in part Ramirez and Santana's motion; it denied summary judgment for Ramirez and Santana on the issue of willfulness. The

4

parties resolved the remaining issues by stipulating that Statewide's conduct was not willful and agreeing to the amount of damages.

## II. STANDARDS OF REVIEW

We review summary judgment *de novo*. *Buckner v. Fla. Habilitation Network, Inc.*, 489 F.3d 1151, 1154 (11th Cir. 2007). "Whether an employee meets the criteria for" an exemption under the Fair Labor Standards Act, "although based on the underlying facts, is ultimately a legal question." *Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264, 1268 (11th Cir. 2016). And we review legal questions *de novo*. *Buckner*, 489 F.3d at 1154.

## III. DISCUSSION

The Fair Labor Standards Act requires employers to pay overtime to covered employees for all hours worked in excess of forty hours a week, 29 U.S.C. § 207(a)(1), but it exempts from this requirement "any employee employed in agriculture," *id.* § 213(b)(12). The Act includes primary and secondary definitions of "agriculture." *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762–63 (1949). The primary definition is "farming in all its branches . . . includ[ing] the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . . , [and] the raising of livestock, bees, fur-bearing animals, or poultry[.]" 29 U.S.C. § 203(f). And the secondary definition is "any practices

5

(including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with [primary] farming operations, including preparation for market[ and] delivery to storage or to market or to carriers for transportation to market." *Id.*

The employer bears the burden of establishing that an employee is exempt. *Pioch*, 825 F.3d at 1268. The Supreme Court previously held that the Act's exemptions "must . . . be narrowly construed" because of its "humanitarian and remedial" purpose. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). But it recently corrected course and held that the exemptions from the Act should be interpreted fairly, not narrowly. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 63, at 363 (2012) ("Without some textual indication, there is no reason to give statutory exceptions anything other than a fair (rather than a 'narrow') interpretation."). So we too must give the agriculture exemption its fair meaning. *See* Scalia & Garner, *Reading Law*, at 33 (describing "fair reading" as "how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.").

For Statewide to bear its burden, it must establish that the basic-necessities trips fall under the "on a farm" clause of the secondary "agriculture" definition. The primary definition plainly does not include transportation of workers, which is

6

not "farming." And the text of the secondary definition is clear: non-primary activities must be "performed by a farmer or on a farm" to be considered "agriculture." 29 U.S.C. § 203(f); *see also* 29 C.F.R. § 780.129; *Farmers Reservoir*, 337 U.S. at 766; *Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003). Statewide does not challenge the conclusion that it is not a farmer because it "did not own, lease, or control the farms or crops harvested." *See* 29 C.F.R. § 780.131 ("As a general rule, a farmer performs his farming operations on land owned, leased, or controlled by him and devoted to his own use."). Nor does it challenge the conclusion that the driving trips were not a minor part of Ramirez's and Santana's work. *See id.* § 780.136 (explaining that an employee who works "on a farm" is exempted even if "a minor and incidental part of the work of such an employee occurs off the farm"). So to be exempt from the overtime requirements, the driving trips must have been "performed . . . on a farm."

Activities that are "performed . . . on a farm" are activities performed within the geographical area that constitutes a farm. *See id.* § 780.135 (defining "farm" as "a tract of land devoted to the actual farming activities included in" the primary definition of "agriculture" and explaining that the "total area of a tract operated as a unit for farming purposes is included in the 'farm'"). For example, "building terraces or threshing wheat and other grain," "erect[ing] . . . silos and granaries," and "digging wells or building dams for farm ponds" are activities "performed 'on

7

a farm.'" *Id.* § 780.136. By contrast, activities "performed away from the farms being serviced," such as the repairing of equipment off a farm, are excluded. *Hodgson v. Ewing*, 451 F.2d 526, 527, 529 (5th Cir. 1971); *see also Boyls v. Wirtz*, 352 F.2d 63, 63 (5th Cir. 1965). In *Farmers Reservoir*, for example, the Supreme Court concluded that "the physical operation, control and maintenance" of "canals, reservoirs, and headgates" for a company that stored water and distributed it to farms through the company's canals were activities "[c]learly . . . not done on a farm." 337 U.S. at 757, 767.

Ordinarily, "[a]ny practice which cannot be performed on a farm"—like transportation-related activities on public roads—falls outside the secondary definition "when performed by someone other than a farmer." 29 C.F.R. § 780.134. In *Wirtz v. Osceola Farms Co.*, the former Fifth Circuit held that the activities of flagmen who stopped traffic on public roads so that truck drivers taking sugar cane from a farm to a sugar mill could pass safely were "clearly outside the [agriculture] exemption." 372 F.2d 584, 588–90 (5th Cir. 1967). And the truck drivers were not exempted either. *Id.* at 588–89. So even work that begins on a farm but is mostly performed away from a farm ordinarily falls outside the exemption. *See also Holly Farms Corp. v. NLRB*, 517 U.S. 392, 395–96, 401 (1996) (employer conceded that truck drivers who transported chickens and crews between farms and processing plant did not perform activities "on a farm");

8

*Chapman v. Durkin*, 214 F.2d 360, 363 (5th Cir. 1954) (holding that hauling fruit away from a farm "cannot be said to be work performed . . . on a farm" (internal quotation marks omitted)).

In limited circumstances, our precedents have held that work performed neither by a farmer nor on a farm can be swept into the secondary definition of "agriculture." *Osceola Farms* concluded that activities that were performed off a farm but that had "significance and purpose only in making it possible for the [farming] activity to take place" fell within the agriculture exemption. 372 F.2d at 589 n.4. But it made clear that those activities were physically tied to a farm. It held that transporting workers to and from a farm for harvesting was a secondary agriculture activity. *Id.* at 589. And where an employer provided field workers with meals while they were harvesting on a farm, transporting the food to that farm also fell within the secondary definition. *Id.* Our predecessor court explained that "[t]he feeding of [harvest] workers at their places of work" was a practice "performed . . . on a farm . . . as an incident to or in connection with [the primary] farming operation," and "[t]he transportation of necessary food to the on-the-farm site [was] incident to, or a part of, the on-the-job feeding arrangement *and itself terminate[d] on the farm*." *Id.* (emphasis added) (internal quotation marks omitted). It contrasted these two transportation activities with driving cane to the

mill on the ground that the latter did not enable the harvesting activities—at that point, the harvesting was done. *Id.* at 589 n.4.

Our predecessor court also held that the work of cooks and attendants at labor camps in close proximity to fields worked by laborers for whom they cooked and cleaned fell within the meaning of "on a farm." *Brennan v. Sugar Cane Growers Coop of Fla.*, 486 F.2d 1006, 1011 (5th Cir. 1973). *Brennan* explained that it would "not be physically possible" to place the "labor camps right in the middle of the cane fields" and emphasized that the camps were "adjacent to and near the farmland being harvested," not at "some remote location." *Id.* Because "[t]he drafters of the section could not anticipate every conceivable factual situation arising in the future under the agricultural exemption," *Brennan* concluded that this cooking and cleaning work fell within the definition of activities performed "on a farm." *Id.*

We have doubts about whether *Brennan* was correctly decided. After all, the Supreme Court recently rejected its mode of reasoning when interpreting the same Act. *See Encino Motorcars*, 138 S. Ct. at 1143 ("Even if Congress did not foresee all of the applications of the statute, that is no reason not to give the statutory text a fair reading."). But we need not decide that question here.

Santana's and Ramirez's driving trips were not agricultural activities within the fair meaning of the Act. They occurred off a farm. *Hodgson*, 451 F.2d at 529.

10

And they neither directly enabled harvesting or on-the-farm secondary activities nor were physically tied to a farm. *Osceola Farms*, 372 F.2d at 589. This type of transportation is not bound up with an on-the-farm activity like feeding workers on a farm, and it is a few steps removed from harvesting. And it is wholly divorced from physical contact with a farm. These driving trips were like the activities of the flagmen in *Osceola Farms*, whose "work . . . was done off the farm at public roads" and fell outside the definition of "agriculture," not like those of the drivers who took workers or food to the farm. *Id.* at 590.

*Brennan* is distinguishable. In *Brennan*, the activities occurred at camps adjacent to farmland. 486 F.2d at 1011. The activities here began and ended offsite at the accommodations. And with some farms up to two hours away from their accommodations, we cannot treat the accommodations—and the grocery store, laundromat, and bank—as part of a constructive farm. The cooking and cleaning work in *Brennan* represents the "outer limits of activities that might be said to qualify under [the] secondary meaning" of "agriculture." *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 413 (5th Cir. 1975). Extending the secondary definition of "agriculture" any further would empty the "on a farm" requirement of any meaning. *See* Scalia & Garner, *Reading Law* § 26, at 174 ("If possible, every word and every provision is to be given effect[.]"). We will not do so.

11

For the same reason, we decline Statewide's invitation to follow the Fifth Circuit's expansive interpretation of *Osceola Farms* in *Reich v. Tiller Helicopter Services, Inc.*, 8 F.3d 1018 (5th Cir. 1993). *Reich* interpreted *Osceola Farms* to mean that off-the-farm work performed by non-farmer employees is exempt so long as the "work was incidental to the primary agricultural task" performed on a farm. *Id.* at 1027–28. By interpreting *Osceola Farms* so broadly, *Reich* read "by a farmer or on a farm" out of the statute. That reading is not a "fair" one, as *Encino Motorcars* requires. 138 S. Ct. at 1142.

Even if we were to follow *Reich*, Statewide could not overcome a second hurdle. These driving trips were not "incidental to or in conjunction with [primary] farming operation[s]" because they were not connected to a single farming operation. *Farmers Reservoir*, 337 U.S. at 766 n.15. For work "performed . . . on a farm" to qualify as "agriculture," it must be connected and subordinate to primary agricultural operations on that same farm. 29 C.F.R. §§ 780.136, 780.141; *accord Sariol v. Fla. Crystals Corp.*, 490 F.3d 1277, 1280 (11th Cir. 2007); *cf. Maneja v. Waialua Agric. Co.*, 349 U.S. 254, 263–64 (1955) (workers employed by a farmer who repaired farming equipment on the farm fell under exemption because they worked on only that farmer's equipment). After all, the work must be performed "on *a* farm." The use of the indefinite article "a" before the word "farm" means that the phrase refers to a single farm. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474,

No. 19-863, slip op. at 5–9, 15–16 (Apr. 29, 2021) (concluding that information to be provided in "*a* notice" must be contained in a single document). This requirement distinguishes secondary agricultural work that is part of a farm's (or a farmer's) primary operations from work that is "separately organized as an independent productive activity." *Farmers Reservoir*, 337 U.S. at 761. When farming-related work pertains to multiple farms' operations, it falls in the latter category. *See, e.g.*, *Mitchell v. Huntsville Wholesale Nurseries, Inc.*, 267 F.2d 286, 290–91 (5th Cir. 1959) (concluding that processing nursery stock received from both the employer-farmer's farm and other farms on an off-the-farm warehouse was not exempted).

That secondary agricultural activities must be connected to a single farm's primary farming operations underscores why they must be physically connected to the farm itself. When activities are physically tied to a farm, we can tell whether those activities are part of that farm's primary agricultural activities. So, for example, driving workers to a farm for harvesting is connected to harvesting on that particular farm. But when activities—like the basic-necessities driving trips—occur completely off a farm and are tied to harvesting services for many different farms, we cannot match the off-the-farm activity to the operations of any one farm. This type of work is separate from the agricultural activities themselves, akin to a non-farmer's operation of an off-the-farm irrigation system servicing multiple

13

farms. *Cf. Farmers Reservoir*, 337 U.S. at 763, 767; *see also Holly Farms*, 517 U.S. at 411 (O'Connor, J., concurring in the judgment in part and dissenting in part) (explaining that the "on a farm" clause is concerned with the nature of the work performed by the worker).

Finally, Statewide argues that the basic-necessities transportation is "agriculture" because the transportation was "indispensable for the H-2A workers" and it provided this transportation only to comply with the requirements of the H-2A program. But even assuming that this transportation was necessary for *harvesting*, the Supreme Court has explained that "whether a particular type of activity is agricultural is not determined by the necessity of the activity to agriculture." *Farmers Reservoir*, 337 U.S. at 761; *see also Fort Mason Fruit Co. v. Durkin*, 214 F.2d 363, 364 (5th Cir. 1954) (rejecting argument that employees who worked off a farm were agricultural workers because their work was "necessary to the maintenance and operation" of employer's business that gathered fruit from farms (internal quotation marks omitted)). Simply put, "[n]o matter how closely related it may be to farming operations, a practice performed neither by a farmer nor on a farm is not within the scope of the 'secondary' meaning of 'agriculture.'" 29 C.F.R. § 780.129. The agriculture exemption does not apply.

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of Ramirez and Santana.

14