United States Court of Appeals,

Fifth Circuit.

No. 92-7368.

Robert B. REICH, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

TILLER HELICOPTER SERVICES, INC. and William J. Tiller, Sr., Defendants-Appellees.

Dec. 10, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before REAVLEY and GARWOOD, Circuit Judges, and LAKE,[*] District Judge.

SIM LAKE, District Judge:

The Secretary of Labor appeals the rulings of the district court following a bench trial (1) that certain work of employees of Tiller Helicopter Services, Inc., was exempt agricultural work under the Fair Labor Standards Act (FLSA), (2) that the Secretary's failure to pursue trial by jury precluded the court from awarding liquidated damages, and (3) that Appellees' violations of the Fair Labor Standards Act were not willful. We AFFIRM.

I. *Background*

William J. Tiller, Sr., owns and manages several thousand acres of non-contiguous farm and ranch land in south Texas. He also owns and operates Tiller Helicopter Services, Inc. (Tiller Helicopter), a company headquartered on his farm located near Alice, Texas. Tiller Helicopter owns and operates six or seven helicopters that are used to dust lawns, herd cattle, and spray herbicides, insecticides, and fertilizers on crops for Tiller and approximately 200 client farmers. Although most of Tiller Helicopter's clients are located in south Texas, some are located as far east as Beaumont, Texas, and as far west as Marfa, Texas.

The trial record shows that a typical day for Tiller Helicopter employees begins at the Tiller farm, where helicopters are loaded onto trailers. Tiller Helicopter employees then fill the fuel and water tanks on the trailers, load unmixed chemicals onto the trailers, and transport the trailers in

[*]District Judge of the Southern District of Texas, sitting by designation.

caravans of two or three vehicles to farms of clients who have contracted for aerial spraying services. Upon arrival at a client's farm, Tiller Helicopter employees measure and mix the chemicals with water, load the mixtures onto the helicopters, and ready the helicopters for spraying. During spraying operations some employees serve as flagmen to guide the helicopter pilots. Upon completion of a spraying operation, employees either return to Tiller Helicopter headquarters or travel to another client's farm to perform additional spraying operations. At the end of the day employees return to Tiller Helicopter headquarters where they flush the chemical tanks on the trailers and park, clean, fuel, and decontaminate the helicopters in preparation for the next day's operations. Occasionally the amount of time spent traveling to and from a client's farm exceeds the time spent performing spraying operations on the client's farm. In addition to these daily duties, employees also clean and maintain trailers and sometimes maintain helicopters at Tiller Helicopter's headquarters.

On December 21, 1988, the Secretary[1] filed suit against Tiller Helicopter and its principal officers, William J. Tiller, Sr., Martha J. Tiller, and William J. Tiller, Jr.,[2] under the FLSA on behalf of four Tiller Helicopter employees: Jose Luis Davila, Tito Gonzales, Joe Pena, and Ray Solis. The Secretary's complaint alleged that since January 1, 1985, Appellees had violated the FLSA by paying these employees less than the minimum hourly rates required by the FLSA, by employing them for more than 40 hours a week without compensating them at the FLSA's overtime rate, and by failing to make, keep, and preserve adequate records showing the hours worked each day and the total hours worked each week by each employee. The Secretary alleged that these violations of the FLSA were willful. The Secretary's Complaint asserted jurisdiction under 28 U.S.C. § 1345 and § 17 of the FLSA, 29 U.S.C. § 217, and requested a judgment permanently enjoining Appellees from violating the FLSA and "restraining the withholding of payment of minimum wages and overtime compensation found by the court to be due employees under the Act" together with prejudgment and post-judgment

---

[1]When the suit was filed the plaintiff was former Secretary Ann McLaughlin. When the case went to trial former Secretary Lynn Martin was the plaintiff. Pursuant to Fed.R.App.P. 43, Secretary Robert Reich has been substituted as plaintiff.

[2]The Secretary voluntarily dismissed Martha J. Tiller and William J. Tiller, Jr., in April of 1990.

interest and "such other and further relief as may be necessary and appropriate, including an additional amount as liquidated damages equal to the back wages found to be due to the employees named in attached Exhibit "A" in accordance with Section 16(c) of the Act [29 U.S.C. § 216(c) ] and costs of this action."  (ROA 866-867)

After a two-day bench trial the district court found that loading trailers and tanks at Tiller Helicopter headquarters, traveling to and from job sites, and "simple flushing of the tanks on the trailers" upon return to Tiller Helicopter headquarters was exempt from overtime wages under the FLSA, but that cleaning and maintaining the trailers and helicopters was not exempt work.  *Martin v. Tiller Helicopter Services, Inc.,* 778 F.Supp. 1395, 1398-1399 (S.D.Tex.1991).  The court rejected the Secretary's demand for liquidated damages after concluding that the Secretary's failure to pursue trial by jury deprived the court of the power to award liquidated damages.  The court also rejected the Secretary's argument that Appellees' violations of the FLSA were willful.  (The FLSA provides a two-year statute of limitations.  If the cause of action arises from a "willful violation," however, a three-year limitations period applies.  29 U.S.C. § 255(a).)  The court enjoined Appellees from committing further violations of the minimum wage, overtime, and record-keeping provisions of the FLSA and from withholding unpaid back wages related to non-exempt work and ordered Appellees to pay back wages based on the application of a two-year statute of limitations, together with prejudgment interest, post-judgment interest, and costs.  *Id.* at 1399-1401.

The district court's rulings as to the scope of the agricultural exemption to the FLSA and the court's inability to award liquidated damages following a bench trial are conclusions of law that this court reviews *de novo.  Skipper v. Superior Dairies, Inc.,* 512 F.2d 409, 413 (5th Cir.1975).  The district court's determination that Appellees' conduct was not willful is a finding of fact not to be set aside unless found to be "clearly erroneous."  Fed.R.Civ.P. 52(a);  *Cox v. Brookshire Grocery Co.,* 919 F.2d 354, 356 (5th Cir.1990);  *Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1415 (5th Cir.1990).

Although this court has previously addressed the FLSA's agricultural exemption and the remedies available to the Secretary in an FLSA action, the parties' arguments require that we plow this ground again, and perhaps more deeply than necessary, in the hope that a thorough explanation

of how we arrive at our decisions may pretermit similar arguments in future cases.

## II. *The FLSA's Agricultural Exemption*

The Secretary argues that the district court erred in holding that loading trailers and tanks at Tiller Helicopter headquarters for spraying operations, traveling to and from work sites, and flushing the tanks on the trailers upon return to Tiller Helicopter headquarters was exempt work within the meaning of the FLSA because the court's holding effectively eliminates the statutory requirement that agriculturally exempt work be performed "by a farmer or on a farm." 29 U.S.C. § 203(f). Appellees argue that these necessary and incidental agricultural support activities fall within the agricultural exemption to the FLSA because both Mr. Tiller and Tiller Helicopter are farmers performing work on a farm. An understanding of the parties' arguments and our resolution of them requires an appreciation of the legislative history of the agricultural exemption and its evolution through case law and regulations.

In 1938 Congress enacted the FLSA as a means of regulating minimum wages, maximum working hours, and child labor in industries that affected interstate commerce. 29 U.S.C. § 202; 81 Cong.Rec. 7648 (1937). As originally enacted the FLSA exempted agricultural workers from both its minimum wage and maximum hour provisions. 29 U.S.C. § 213(a)(6) (1938). Although with few exceptions the exemption of agricultural workers from the Act's minimum wage protection ended with the 1966 amendments to the Act, agricultural workers are still exempted from the FLSA's maximum hour, or overtime, provisions. 29 U.S.C. § 213(b)(12) states:

> (b) The provisions of section 207 [maximum hours] of this title shall not apply with respect to—
>
> . . . . .
>
> (12) any employee employed in agriculture or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways, not owned or operated for profit, or operated on a sharecrop basis, and which are used exclusively for supply and storing of water for agricultural purposes.

The dispute here is whether the Tiller Helicopter employees were "employed in agriculture" with regard to those activities found to be exempt by the district court.

A. *Development of the Agricultural Exemption*

The sponsor of the bill that was ultimately enacted as the FLSA, Senator Black of Alabama, clearly and unambiguously described the broad reach intended by the FLSA's agricultural exemption.

> The bill specifically and unequivocally excludes certain industries and certain types of business from its scope and effect. It specifically excludes workers in agriculture of all kinds and of all types. There is contained in the measure, perhaps, the most comprehensive definition of agriculture which has been included in any one legislative proposal.
>
> We have placed together in the bill definitions of agricultural work which have been fixed from time to time in other legislative enactments, and in addition to that we have drawn liberally from Mr. Webster's definition of agriculture.

81 Cong.Rec. 7648 (1937). As originally introduced the FLSA defined "agriculture" as "... any practices ordinarily performed by a farmer as an incident to such farming operations." 81 Cong.Rec. 7653 (1937). During the ensuing Congressional debates some senators became concerned that this language was not broad enough to exempt independent contractors hired by farmers to perform agricultural services such as wheat threshing.[3] In order to insure that independent contractors who

---

[3]This concern is reflected by the following discourse between Senators Tydings, Black, and Borah, as well as the subsequent comments of Senator Bone.

> Mr. TYDINGS. The threshing of wheat and similar crops on the farm would be classed as coming within the agricultural exemption; would it not?
>
> Mr. BLACK. I so understand.
>
> Mr. TYDINGS. What I am thinking of is that quite often the threshing crew is not a part of the farmer's organization. There are men who make a business of going around with threshing and baling machines with enough help to come upon a farm and make a contract with the farmer to thresh his wheat. I should like to know if in such a case it is the Senator's opinion that the threshing crew would be exempt, or whether they would be under the operation of the hours provision of the bill.
>
> Mr. BLACK. I will say to the Senator that I should not wish to attempt to draw the lines in the shadowy regions that might divide one condition from another.
>
> Mr. TYDINGS. Let me clear up my question. As I understand the bill, its purpose is to exempt agriculture from its provisions, both as to hours and as to wages.
>
> Mr. BLACK. The Senator is correct.
>
> Mr. TYDINGS. I am asking this question because I believe, inadvertently, a loophole has been left which I am sure the proponents of the bill do not mean to leave.

In the case of threshing wheat, which would apply particularly to the wheat fields of Kansas, there, as a general rule, the farmers do not do their own threshing, as I am advised. They hire threshers who go about and come on the farm and make a contract to thresh the wheat. I suppose the thresher would be classed as a farmer within the spirit of the bill, but under the wording of the bill it is my opinion that he would be under the wage and hour provision.

I wanted to bring this matter to the attention of the Senator from Alabama simply because as I understand, farming in all its operations, from the time the grain is put into the ground until it leaves the farm, is to be exempted from the provisions of the measure; but under the bill such a man as I have indicated is not exempt.

Would a thresher be under the provisions of this bill threshing wheat on another man's farm? That is the question.

In the case I visualize ... the farmer is not performing the service. The man to whom I refer makes a business of doing nothing but threshing. He owns his own machine, and hauls it from farm to farm, and enters into contracts with farmers to thresh their crops; the point being that while he is dealing with an agricultural commodity, he is not necessarily a farmer, and he is not doing work ordinarily done by a farmer.

Mr. BORAH. He is doing the exact work which the farmer did before he took it up.

Mr. TYDINGS. That is true; but I do not think the bill is drawn in sufficient detail to bring the man to whom I refer under its provisions of exemption.

Mr. BONE. I think the business experience of us all will justify the conclusion that if a man operates a threshing outfit, and goes from one farm to another farm, such a man is an independent contractor. He is not a farmer. That is not an operation incident to farming, because the man is engaging in a cold-blooded business operation, going from one farm to another, precisely as a huckster goes around and sells tinware to farmers.

I realize that in trying to meet that sort of an issue we get into a twilight zone. It is like the suggestion of the Senator from Idaho (Mr. Pope) about the farmer bottling milk. There comes a point where we have to draw a line somewhere; and if a man is running a big threshing outfit, a gigantic combine out West in the State of the Senator from Montana (Mr. Murray), and he hires a large number of men, and they go on a farm with tractors and engage in an operation resulting in threshing thousands of bushels of wheat in a day, it seems to me that sort of an operation, which is in the exclusive control of the contractor, could hardly be called farming; and when he is hiring men and just being an employer, I am wondering how he could be called a farmer, or his operation an incident to a farming operation. He does not own a farm. He has not any connection with it except to take his threshing apparatus there and thresh the wheat and then get off the land.

I know the matter was pretty thoroughly discussed by the Senator from

performed agricultural tasks on farms, but who were not technically farmers, were covered by the exemption, Congress adopted an amended definition of "agriculture" that has remained unchanged since the FLSA was enacted.[4]

---

Maryland (Mr. Tydings);  but it seems to me that if there is any way of meeting that issue in the bill by a little further clarification, it might be advisable, and might avoid trouble in the future.

81 Cong.Rec. 7653 and 7659 (1937).

[4]The purpose of the amendment was clearly stated by its sponsor on the Senate floor:

Mr. McGILL.  Mr. President, I offer an amendment, and ask that it be reported from the desk.

Mr. President, the purpose of the amendment is to broaden the definition of "employee" as applied to agriculture.  I can readily see how some have construed the language of the bill to mean that one who operates a threshing machine outfit and employs a crew and is employed by a farmer to thresh his wheat might be included under the provisions of the bill.  Likewise, those who are engaged in harvesting and delivering to market might be included.  It is my understanding, although no definite commitment has been made, that the amendment is not opposed by those in charge of the bill.

Mr. GEORGE.  Is it the purpose of the amendment to exempt those who thresh grain?

Mr. McGILL.  Those who thresh grain, who harvest grain and deliver it to market.

Mr. GEORGE.  Would the amendment also apply to the harvesting of any other crop?

Mr. McGILL.  It would apply to any commodity produced on a farm.

Mr. GEORGE.  Would it apply to peanut pickers who pick in the fields.

Mr. McGILL.  Yes.

Mr. GEORGE.  And who move peanuts to market?

Mr. McGILL.  Yes;  that is my understanding.

Mr. GEORGE.  I should like to ask the Senator from Alabama if that is his interpretation of the amendment.

Mr. BLACK.  That is my interpretation of the amendment, and it is my belief that the bill as originally drawn covers what is now contained in the language of the amendment;  but some Senators who were doubtful about it wished to draw a clarifying amendment.

"Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities ..., the raising of livestock ... and any practices ... *performed by a farmer or on a farm as an incident to or in conjunction with such farming operations,* including preparation for market, delivery to storage or to market, or to carriers for transportation to market.

29 U.S.C. § 203(f). (emphasis added)

The Supreme Court first addressed the scope of the agricultural exemption in *Farmers Reservoir & Irrigation Co. v. McComb,* 337 U.S. 755, 760-763, 69 S.Ct. 1274, 1277-1278, 93 L.Ed. 1672 (1949). The Court stated that the determinative issue in analyzing the scope of the exemption was not whether the work "is necessary to agricultural production ... [but whether it] can itself be termed agriculture." *Id.* at 759-760, 69 S.Ct. at 1277. The Court concluded that the exemption recognized two types of agricultural activity: primary and secondary.

Whether a particular type of activity is agricultural depends, in large measure, upon the way in which that activity is organized in a particular society ... The question is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity ... As can be readily seen, this definition [of agriculture] has two distinct branches. First, there is the primary meaning. Agriculture includes farming in all its branches. Certain specific practices such as cultivation and tillage of the soil, dairying, etc., are listed as being included in this primary meaning. Second, there is the broader meaning. Agriculture is defined to include things other than farming ... whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidently to or in conjunction with "such" farming operations.

337 U.S. at 760-763, 69 S.Ct. at 1277-1278. For the broader, "secondary" agricultural activity to fall within the scope of the exemption, the Court stated that the activity had to meet two criteria: (1) it had to be performed either by a farmer or on a farm and (2) it had to be incidental to or in

Mr. GEORGE. I am sure it does not in fact do so, because the picking of peanuts and the harvesting of grain in my part of the country are done purely by contract with outsiders, who in a great many cases have no farm interest. What I want to get at is whether, in the opinion of the Senator from Alabama, the language of the amendment of the Senator from Kansas includes any field crop that is threshed, as in the case of grain, or picked, as in the case of peanuts in the field.

Mr. BLACK. Unquestionably.

Mr. McGILL. I may say to the Senator from Georgia and other Senators that it is my object to make the language of the amendment broad enough to include all work done on a farm, so long as it is incidental to agricultural purposes.

81 Cong.Rec. 7888 (1937).

conjunction with farming operations.  *Id.* at 766 and n. 15, 69 S.Ct. at 1280 and n. 15.

In *Farmer's Reservoir* the Court held that work of employees of a water supply company cooperatively owned by a group of farmers was not exempt as secondary agricultural work even though the work was incidental to agriculture because it was not performed either by farmers or on a farm.  337 U.S. at 767, 69 S.Ct. at 1281.  The Court reasoned that the employees' work was not performed by farmers, although the company that employed them was wholly owned by farmers, because the company had been established as an independent entity to supply water to farmers—an activity that the court characterized as self-contained and separated from the farmers' farming activities.  The Court also reasoned that the employees' work was not exempt as work performed on a farm because the employees worked only on waterways owned by the company and never worked on the farms to which the company supplied water.[5]  337 U.S. at 767-768, 69 S.Ct. at 1281.

Six years later in *Maneja v. Waialua Agricultural Co.,* 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040 (1955), the Court again addressed the scope of the agricultural exemption.  The Court held that certain employees of a corporate sugar plantation were exempt from the FLSA's wage and hour provisions while others were not exempt even though, unlike the *Farmer's Reservoir* employees, all of the *Waialua* employees worked both for a farmer and on a farm.  The Court held that employees who operated the farm's railroad to transport work crews, equipment, and supplies to and from the fields and sugar cane to the processing plant and those who repaired the mechanical implements used in farming were exempt because their tasks were incidental to the farm's primary agricultural activities.  Employees who worked in the corporation's sugar processing plant and who maintained

---

[5]The Court so found even though the company's waterways were adjacent to the farms to which they supplied water.  Congress disagreed with the result reached in *Farmers Reservoir,* and again evidencing its intent that the agricultural exemption be broadly construed, immediately amended the FLSA to expressly exempt

> any employee employed in agricultural or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways, not owned or operated for profit, or operated on a share-crop basis, and which are used exclusively for supply and storing of water for agricultural purposes.

29 U.S.C. § 213(a)(6) (1949).  (In 1966 when Congress restricted this exemption to the FLSA's maximum hour provision, it changed the subsection in which it appears to § 213(b)(12).)

the worker's village were not exempt because their jobs were not incidental to the farm's primary agricultural activities. 349 U.S. at 262-263, 75 S.Ct. at 724-725. The effect of *Waialua* was to narrow the second prong of the test for secondary agricultural activity. For secondary agricultural activity to be exempt it had to be performed by a farmer or on a farm and it had to be incidental to the farming operations performed either by the farmer for whom it was done or on the farm where it was done.[6]

While *Farmer's Reservoir* and *Waialua* established that the agricultural exemption is not available to nonfarmers performing secondary agricultural tasks off the farm, or to farm employees performing secondary agricultural tasks on a farm that are not incidental to the farm's own farming operations, neither case addressed the applicability of the exemption to independent contractors who perform primary agricultural tasks on the farms of client farmers and secondary agricultural tasks incidental to their clients' farming operations off their clients' farms. Those issues were addressed by this court in *Wirtz v. Osceola Farms Co.,* 372 F.2d 584 (5th Cir.1967). In *Osceola Farms* we found that the principles established in *Farmer's Reservoir* and *Waialua* did not preclude us from recognizing the need for independent contractors to perform secondary agricultural tasks off the farms of their client farmers without losing their right to the agricultural exemption. Osceola Farms was an independent contractor that provided farm laborers to harvest sugar cane from the fields of client farmers. We held that Osceola Farms drivers who transported the farm laborers to and from client's farms and who transported meals from off-farm locations to the laborers to eat in the fields were exempt because their work was incidental to the primary agricultural task of harvesting performed by the Osceola Farms laborers. *Id.* at 589.

---

[6]The Court foreshadowed this result in *Farmers Reservoir* when it stated:

> Although not relevant here, there is the additional requirement that the practices be incidental to "such" farming. Thus processing, on a farm, of commodities produced by other farmers is incidental to or in conjunction with the farming operation of the other farmers and not incidental to or in conjunction with the farming operation of the farmer on whose premises the processing is done. Such processing is, therefore, not within the definition of agriculture.

337 U.S. at 766 n. 15, 69 S.Ct. 1280 n. 15, *citing Bowie v. Gonzalez,* 117 F.2d 11 (1st Cir.1941).

B. *Application of the Agricultural Exemption to Tiller Helicopter's Employees*

The parties do not dispute that the employees on whose behalf the Secretary brought this action each spend part of their time employed in primary agriculture, i.e. cultivating the soil on farms of client farmers through the application of insecticides, herbicides, and fertilizers to fields and crops.[7] The dispute arises over the time that the Tiller Helicopter employees spend at the Tiller Helicopter farm loading the tanks and trailers necessary for spraying operations and flushing the tanks and trailers in preparation for the next day's work and the time they spend on public roads traveling to and from the clients' farms.

Asserting that secondary agricultural tasks must be performed either by a farmer or on the farm to which they are incidental, the Secretary argues that these tasks performed by Tiller Helicopter employees are not exempt because they are not performed by farmers or on the farms of the client farmers and are not the type of off-farm tasks that can be regarded as performed on a farm because Tiller Helicopter employees spend more than "a small amount of time" performing these off-farm tasks. Appellees respond that the employees are covered by the agricultural exemption because Tiller is a farmer and because the employees in question perform their off-farm tasks either on Tiller's farm or on roads en route to the farms of Tiller Helicopter's clients.

Based on the principles established in *Farmer's Reservoir, Waialua,* and *Osceola Farms* we conclude that Tiller Helicopter employees are not employed by a farmer and that the tasks they perform on Tiller's farm are not performed "on a farm" for purposes of the agricultural exemption but that the secondary agricultural tasks performed by these employees are nevertheless exempt from the FLSA's overtime provisions because they are incidental to the primary agricultural activities that the employees perform on the farms of Tiller Helicopter's clients.

---

[7]By regulation the Secretary has defined "cultivation and tillage of the soil" as

> all the operations necessary to prepare a suitable seedbed, eliminate weed growth, and improve the physical condition of the soil. Thus, grading or leveling of land or removing rock or other matter to prepare the ground for a proper seedbed or building terraces on farmland to check soil erosion are included. The application of water, fertilizer, or limestone to farmland is also included.

29 C.F.R. § 780.110.

1. *Tiller Helicopter employees are not employed by a farmer and tasks performed on Tiller's farm are not performed on a farm for purposes of the agricultural exemption.*

Although the parties do not dispute that Tiller himself is a farmer and that the employees at issue load and flush tanks and trailers on Tiller's farm, these employees are employed by Tiller Helicopter, an independently organized business that owns no land, raises no crops, and performs several different types of services, some of which are not agricultural in nature, for example, lawn spraying. These employees are therefore not employed by a farmer for purposes of the agricultural exemption. *Farmer's Reservoir,* 337 U.S. at 763, 69 S.Ct. at 1278; 29 C.F.R. § 780.137. Moreover, because the secondary agricultural tasks of loading and flushing the tanks and trailers performed on Tiller's farm are performed in conjunction with agricultural activities conducted on the farms of Tiller Helicopter's clients rather than the agricultural activities conducted on Tiller's own farm, the fact that the work is performed on Tiller's farm does not mean that it is performed "on a farm" for purposes of the agricultural exemption. *Farmer's Reservoir,* 337 U.S. at 766 n. 15, 69 S.Ct. 1280 n. 15, *citing Bowie,* 117 F.2d 11; *Waialua,* 349 U.S. at 262-263, 75 S.Ct. at 724-725; 29 C.F.R. § 780.141.

2. *Secondary agricultural tasks performed by Tiller Helicopter employees are exempt because they are incidental to primary agricultural activities that the employees perform on a farm.*

Our conclusion that the affected employees are not employed by a farmer and that much of the work at issue is not performed on a farm does not end our analysis because, as the Supreme Court explained in *Farmer's Reservoir,* "the question here is whether the occupation of the field employees of the ... company can itself be termed agriculture." 337 U.S. at 760, 69 S.Ct. at 1277. Because the Tiller Helicopter employees' tasks of applying herbicides, insecticides, and fertilizers to the fields of client farmers fall within the definition of agriculture adopted by Congress in 29 U.S.C. § 203(f), we conclude that the disputed off-farm activities are exempt because they are incidental to the primary agricultural tasks that the employees perform on clients' farms. This result is supported by the legislative history of the FLSA, our holding in *Osceola Farms,* and the Secretary's own regulations.

The legislative history of the FLSA that we have chronicled above reflects Congress's unequivocal intent to exempt independent contractors who travel from farm to farm assisting farmers

in primary agricultural activities from the scope of the FLSA by including them within the agricultural exemption. Like the wheat threshers and peanut harvesters discussed in the congressional debates, Tiller Helicopter employees travel from farm to farm assisting farmers in the primary agricultural task of cultivating the soil. In his own regulations the Secretary acknowledges that

> [t]he legislative history makes it plain that ... language was particularly included [in the FLSA] to make certain that independent contractors such as threshers of wheat, who travel around from farm to farm to assist farmers in what is recognized as a purely agricultural task ... should be included within the definition of agricultural employees.

29 C.F.R. § 780.128.

Recognizing that aerial spraying operations are analogous to wheat threshing operations, and that aerial spraying necessarily involves off-farm activities that fall within the agricultural exemption, the Secretary has exempted by regulation pilots and flagmen employed by aerial spraying contractors and decreed that off-farm work performed by such employees will not preclude them from coming within the ambit of the agricultural exemption.

> Pilots and flagmen engaged in the aerial dusting and spraying of crops are examples of the types of employees of independent contractors who may be considered employed in practices performed "on a farm." ... Even though an employee may work on several farms during a workweek, he is regarded as employed "on a farm" for the entire workweek if his work on each farm pertains solely to farming operations on that farm. The fact that a minor and incidental part of the work of such an employee occurs off the farm will not affect this conclusion. Thus, an employee may spend a small amount of time within the workweek in transporting necessary equipment for work to be done on farms.

29 C.F.R. § 780.136, *citing Wirtz v. Boyls Spraying Service,* 230 F.Supp. 246 (S.D.Tex.1964), *aff'd per curiam,* 352 F.2d 63 (5th Cir.1965).

Because the legislative history, the Secretary's own regulations, and this court's holding in *Osceola Farms* all contemplate the need for independent contractors performing primary agricultural activities to travel from farm to farm and to perform incidental off-farm tasks without losing their exempt status, we are not persuaded by the Secretary's argument that application of the exemption should turn on either the distances traveled from farm to farm or the amount of time required to complete such off-farm tasks. As we explained in *Osceola Farms,* application of the exemption to employees of independent contractors turns on whether the activities are incidental to primary agricultural activities performed by the contractor's employees on clients' farms. The Tiller Helicopter

employees at issue are analogous to the drivers in *Osceola Farms* who transported laborers to and from the farms of client farmers and transported meals from off-farm sites for the laborers to eat in the clients' fields. Without imposing limitations on the distances traveled by the Osceola Farms drivers or the amount of time spent transporting the laborers and their meals to the lands of client farmers, and despite the fact that some aspects of their work, such as loading workers and meals, occurred on off-farm sites, we held that the drivers were exempt because they performed a function that had "significance and purpose only in making it possible for the harvesting activity to take place" and that terminated on the farms of the client farmers. *Osceola Farms,* 372 F.2d at 589, n. 4.

The Secretary does not dispute that the time Tiller Helicopter employees spend traveling from farm to farm and the time they spend loading and flushing tanks and trailers at Tiller Helicopter headquarters are incidental to the primary agricultural activities that they perform on the farms of Tiller Helicopter's client farmers. Because the only purpose of these activities is to make spraying operations possible on clients' farms, we conclude that like the off-farm activities of the drivers in *Osceola Farms,* the off-farm activities of the Tiller Helicopter employees fall within the scope of the agricultural exemption. Neither the legislative history nor pertinent case law imposes a spatial or temporal restriction on otherwise exempt off-farm activities. (Nor does the Secretary articulate guidelines by which we or district courts are to apply such restrictions.) We therefore agree with the district court that the Secretary's position does not realistically honor the congressional desire for an agricultural exemption broad enough to encompass independent contractors performing primary agricultural tasks for client farmers. *Tiller,* 778 F.Supp. at 1398.

### III. *Liquidated Damages*

The Secretary argues that the district court erred in holding that it could not award liquidated damages because the Secretary failed to request a jury trial. Appellees respond that the district court properly denied the Secretary's claim for liquidated damages because the Secretary only sought back wages pursuant to § 217, and under that statute the Secretary was not entitled either to liquidated damages or to a jury trial. Alternatively, Appellees argue that the district court's award of prejudgment interest estops the Secretary from seeking liquidated damages. Resolution of this issue

requires the court to examine the availability of liquidated damages and prejudgment interest under the FLSA, the right to a jury trial in FLSA actions, and the claims stated in the Secretary's complaint. Only if the court concludes that the Secretary was entitled to recover liquidated damages must it address Appellees' estoppel argument.

A. *Availability of Liquidated Damages and Prejudgment Interest*

The FLSA affords three causes of action, two by the Secretary suing on behalf of injured employees and one by injured employees suing directly. The Secretary's two causes of action for redressing an employer's FLSA violations are created by § 16(c) and § 17, 29 U.S.C. § 216(c) and § 217. Section 216(c) allows the Secretary to sue employers for unpaid minimum wages and overtime compensation, plus an equal amount as liquidated damages, while § 217 allows the Secretary to sue employers for injunctive relief, which can include an order restraining the withholding of back pay.[8] *Castillo v. Givens,* 704 F.2d 181, 186 n. 11 (5th Cir.), *cert. denied,* 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983); *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1062 (2d Cir.1988). Injured employees can sue on their own behalf under § 16(b), 29 U.S.C. § 216(b), for back pay, plus an equal amount as liquidated damages.

1. *Liquidated Damages*

"As used in t he FLSA "liquidated damages' is something of a misnomer. It is not a sum certain, determined in advance as a means of liquidating damages that might be incurred in the future. It is an award of special or exemplary damages added to the normal damages." *Superior Care,* 840 F.2d at 1063 n. 3. As originally enacted, § 216(c) did not allow the Secretary to recover liquidated damages although § 216(b) always allowed injured employees to recover them. In 1974 Congress amended § 216(c) to authorize the Secretary to recover liquidated damages.[9] Because § 217 authorizes injunctive relief, but not liquidated damages, the Secretary can only recover liquidated damages in an action brought under § 216(c). *Donovan v. Brown Equipment & Service Tools, Inc.,*

---

[8]For the sake of brevity the court will sometimes use the term "back pay" instead of unpaid minimum wages and overtime compensation.

[9]Fair Labor Standards Act Amendments of 1974, Pub.L. No. 93-259, § 26, 88 Stat. 73.

666 F.2d 148, 156 (5th Cir.1982).

Section 216(b) provides that employers found liable for back pay in a § 216 suit "shall be liable ... in an additional equal amount as liquidated damages." This language mandates the award of liquidated damages in an amount equal to actual damages following a determination of liability for back pay in a § 216 action. *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 711, 65 S.Ct. 895, 904, 89 L.Ed. 1296 (1945); *Lorillard, Div. of Loew's Theatres, Inc. v. Pons,* 434 U.S. 575, 581 n. 8, 98 S.Ct. 866, 870 n. 8, 55 L.Ed.2d 40 (1978); *Mireles,* 899 F.2d at 1414; *Superior Care,* 840 F.2d at 1063.

The only exception to § 216's statutorily mandated award of liquidated damages is found in § 11 of the Portal-to-Portal Pay Act, 29 U.S.C. § 260, which grants courts the discretionary authority to reduce or eliminate a liquidated damage award under certain circumstances. Section 260 provides that

> if the employer shows to the satisfaction of the *court* that the act or omission giving rise to such action was in good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

(emphasis added) A district court may not exercise its discretionary authority to reduce or eliminate a liquidated damage award unless the employer sustains the "substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith *and* predicated upon ... reasonable grounds." *Mireles,* 899 F.2d at 1415, *quoting Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 468 (5th Cir.1979) (emphasis in original); 29 C.F.R. §§ 790.15 and 790.22(c). *See also Lorillard,* 434 U.S. at 581 n. 8, 98 S.Ct. at 870 n. 8; *McClanahan v. Mathews,* 440 F.2d 320, 322 (6th Cir.1971).

2. *Prejudgment Interest*

In an early case examining the availability of prejudgment interest in FLSA actions the Supreme Court concluded that because liquidated damages and prejudgment interest both compensate an employee for delay in payment, prejudgment interest could not be awarded if liquidated damages were awarded.

> To allow an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation for damages arising from delay in the payment of the basic minimum wages ... Congress by enumerating the sums recoverable in an action under Section 16(b) meant to preclude recovery of interest on minimum wages and liquidated damages.

*Brooklyn Savings,* 324 U.S. at 715-716, 65 S.Ct. at 906. When *Brooklyn Savings* was decided in 1945 the § 216 requirement that employees recovering back pay also recover liquidated damages was without exception because the Portal-to-Portal Pay Act of 1947, which allows trial courts to reduce or eliminate an award of liquidated damages, had not been enacted. *Brooklyn Savings* therefore did not address whether prejudgment interest is recoverable following a trial court's reduction or denial of liquidated damages under § 11 of the Portal-to-Portal Pay Act.

Relying on the rationale underlying the Supreme Court's holding in *Brooklyn Savings,* and without considering the effects of subsequent developments in the law, this court has consistently refused to allow prejudgment interest in actions brought under § 216 regardless of whether liquidated damages were actually awarded, but has allowed prejudgment interest in § 217 actions, in which liquidated damages cannot be recovered. *Foremost Dairies v. Ivey,* 204 F.2d 186, 190 (5th Cir.1953) (affirming district court's denial of liquidated damages and prejudgment interest on grounds that district court correctly concluded that employer had acted in good faith and that prejudgment interest was not recoverable under § 216); *Usery v. Associated Drugs, Inc.,* 538 F.2d 1191 (5th Cir.1976) (prejudgment interest should have been awarded on amount due as back pay under § 217); *Barcellona,* 597 F.2d at 469 (reversing district court's award of prejudgment interest in § 216 action in which liquidated damages had been denied); *Marshall v. Hope Garcia Lancarte, Inc.,* 632 F.2d 1196, 1199 (5th Cir.1980) (prejudgment interest unavailable in § 216 actions); *Peters v. City of Shreveport,* 818 F.2d 1148, 1168 (5th Cir.1987), *cert. dismissed,* 485 U.S. 930, 108 S.Ct. 1101, 99 L.Ed.2d 264 (1988) (upholding distinction between § 216 actions in which prejudgment interest is not recoverable and § 217 actions in which prejudgment interest is recoverable).[10]

B. *Right to Trial by Jury*

---

[10]We have acknowledged that other circuits allow recovery of prejudgment interest in § 216(c) actions in which liquidated damages are not awarded. *See Peters,* 818 F.2d at 1169 n. 15.

A party's right to a jury trial in a FLSA action brought by the Secretary depends on which cause of action the Secretary pursues. Because suits brought under § 217 for injunctive relief are considered actions in equity, parties to § 217 actions have no right to a jury trial. *Sullivan v. Wirtz,* 359 F.2d 426 (5th Cir.), *cert. denied,* 385 U.S. 852, 87 S.Ct. 94, 17 L.Ed.2d 80 (1966); *Wirtz v. Jones,* 340 F.2d 901, 905 (5th Cir.1965). Suits brought under § 216(c) for back pay damages are considered actions at law, however, which, "on proper demand, are triable before a jury." *Jones,* 340 F.2d at 904. *See also Lorillard,* 434 U.S. at 580 n. 7, 98 S.Ct. at 870 n. 7. The right to a jury in a § 216(c) action is neither exclusive nor mandatory, however, and it can be waived if not timely demanded. Fed.R.Civ.P. 38(d).

In a § 216(c) action tried to a jury, the jury determines the employer's liability for back pay damages and, upon a finding of liability, the amount of the back pay award. *Superior Care,* 840 F.2d at 1063. Because § 216 mandates the award of liquidated damages in an amount equal to the amount of the actual damages found by the jury following a finding of liability and because § 11 of the Portal-to-Portal Pay Act accords only the court discretionary authority to reduce or eliminate an award of liquidated damages, parties to § 216(c) actions never have a right to a jury trial on whether liquidated damages are to be awarded. *Castillo,* 704 F.2d at 187 n. 11; *Superior Care,* 840 F.2d at 1063; *McClanahan,* 440 F.2d at 322; 29 U.S.C. § 260.

C. *Claims Stated in the Secretary's Complaint*

The Secretary's six-page complaint asserted jurisdiction under 28 U.S.C. § 1345 and § 17 of the FLSA and requested a judgment permanently enjoining Appellees from violating the FLSA and "restraining the withholding of payment of minimum wages and overtime compensation found by the court to be due employees under the Act" together with prejudgment and post-judgment interest. The complaint also requested liquidated damages in both its opening and closing paragraphs and specifically referenced § 216(c) in its prayer for relief. Relying on *Dole v. Solid Waste Services, Inc.,* 733 F.Supp. 895 (E.D.Pa.1989), *aff'd mem.,* 897 F.2d 521 (3d Cir.), *cert. denied,* 497 U.S. 1024, 110 S.Ct. 3271, 111 L.Ed.2d 781 (1990), and *Martin v. Deiriggi,* 985 F.2d 129 (4th Cir.1992), the Secretary argues that the two references to liquidated damages and the single reference to § 216(c)

in the complaint placed Appellees on notice of a claim for liquidated damages and obligated Appellees to demand a jury on this issue if they wanted one. Relying on *Dole v. Scott-Rice of Texas, Inc.,* 731 F.Supp. 776 (N.D.Tex.1990), and *Superior Care,* 840 F.2d 1054, Appellees argue that the district court correctly found that it was powerless to award liquidated damages because, by referencing § 217 and failing to reference § 216(c) in the complaint's statement of jurisdiction, the Secretary invoked the court's equitable rather than its legal jurisdiction. Although we are not persuaded either by Appellees' argument or by the district court's analysis, we nevertheless conclude that the district court reached the right result.

Section 216(c) authorizes suits filed under it to be brought "in any court of competent jurisdiction," while § 217 contains a jurisdictional provision requiring suits filed under it to be brought in a United States district court. 29 U.S.C. §§ 216(c) and 217. *See Superior Care,* 840 F.2d. at 1062 n. 2. Since § 217, but not § 216, expressly authorizes district court jurisdiction, the court is not persuaded by Appellees' argument that the Secretary's reference to § 217 in the jurisdictional statement precluded him from also pursuing a § 216(c) cause of action. To accept Appellees' argument would be tantamount to ruling that a federal statutory cause of action cannot be pleaded without citing the specific remedial statute in the complaint's jurisdictional statement. This is not the law. *See Deiriggi,* 985 F.2d at 135; *McLaughlin v. Owens Plastering Co.,* 841 F.2d 299, 300 (9th Cir.1988); *Marshall v. Quik Trip Corp.,* 672 F.2d 801, 805 (10th Cir.1982).

Our conclusion that the Secretary need not allege jurisdiction under § 216(c) in order to pursue a § 216(c) cause of action does not end our analysis, however, because, as the Second Circuit explained in *Superior Care,* when "the [Secretary's] choice of remedies implicates a defendant's constitutional right to a jury trial, the Secretary is limited to the specific cause of action that he alleges." 840 F.2d at 1062. We must therefore analyze the allegations in the Secretary's complaint to determine whether the Secretary stated a legal claim for back pay damages under § 216(c), an equitable claim under § 217, or both.[11]

---

[11]Nothing in the FLSA, relevant case law, or the Federal Rules of Civil Procedure precludes the Secretary from seeking both legal relief under § 216(c) and equitable relief under § 217. Because the FLSA authorizes each kind of relief in distinct statutory provisions, the Secretary is

free to proceed jointly or alternatively under both sections. *Tull v. United States,* 481 U.S. 412, 425, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987); *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). Review of the FLSA's legislative history also confirms the conclusion that the Secretary need not choose between filing suit under § 216(c) or § 217, but may bring suit jointly under both provisions for legal and equitable relief.

As originally enacted in 1938, the FLSA allowed employees to sue their employers for unpaid minimum wages, overtime compensation, and liquidated damages under § 216(b) and granted district courts jurisdiction to restrain violations of the statutory wage provisions under § 217, but did not allow the Secretary to seek unpaid minimum wages, overtime compensation, or liquidated damages on behalf of employees. By an administratively developed practice, the Secretary routinely encouraged and supervised the collection and payment of agreed settlements. The encouragement and collection of voluntary settlements was largely ineffective, however, because employers who settled voluntarily remained subject to suits brought by their employees for liquidated damages and attorneys' fees under § 216(b). *See, e.g., Rigopoulos v. Kervan,* 140 F.2d 506 (2d Cir.1943). Recognizing that employee suits were rare, voluntary settlements unlikely, and complete relief desirable, some courts issued injunctions requiring payment of back wages in actions brought by the Secretary under § 217. *See, e.g., McComb v. Frank Scerbo & Sons, Inc.,* 177 F.2d 137 (2d Cir.1949).

In response to such cases, Congress amended § 217 to expressly prohibit courts from awarding back wages, unpaid overtime compensation, and liquidated damages in actions for injunctive relief, but simultaneously enacted § 216(c) authorizing the Secretary to seek back wages and unpaid overtime compensation on behalf of employees who asked the Secretary in writing to bring such actions. Fair Labor Standards Amendments of 1949, Pub.L. No. 81-393, § 15, 63 Stat. 919. (As discussed *supra* slip opinion at 1494, the initial version of § 216(c) did not accord the Secretary the ability to recover liquidated damages.) The Conference Report reflects that the amendment to § 217 prohibiting courts from awarding back wages, overtime compensation, and liquidated damages in actions seeking injunctive relief was adopted in exchange for the enactment of § 216(c) authorizing the Secretary to seek back wages and unpaid overtime compensation, but not liquidated damages. 2 U.S.Code Cong.Serv. 2273 (1949).

The Conference Report stated that the amendment to § 217 did

not preclude the Administrator from joining in a single complaint causes of action arising under section 16(c) and section 17. Nor is it intended that if the Administrator brings an action under section 16(c) he is thereby precluded from bringing an action under section 17 to restrain violations of the act. Similarly, the bringing of an injunction action under section 17 will not preclude the Administrator from also bringing in an appropriate case an action under section 16(c) to collect unpaid minimum wages or overtime compensation owing to employees under the provisions of the law.

*Id.*

By 1961 Congress had concluded that the 1949 amendments were inadequate to secure full relief for employees.

[u]nder the present provisions of the act, the Secretary of Labor has no authority to require the payment of minimum wages and overtime compensation not paid in

In the introductory paragraph of the complaint the Secretary stated that the action was brought

> *to enjoin defendants* from violating the provisions of sections 6, 7, 11, 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 210, *et seq.,* hereinafter referred to as the Act, *and to restrain said defendants from withholding payment of minimum wages and overtime compensation found by the Court to be due employees under the Act* and an equal amount as liquidated damages due to the employees who are named in the attached Exhibit "A".

(ROA 862) (emphasis added)  After identifying the parties and reciting the facts that entitled the Secretary to relief, the Secretary stated in paragraph VIII that

> [a] judgment enjoining the violations hereinabove alleged and restraining the withholding of minimum wages and overtime compensation found to be due defendants' employees is specifically authorized by Section 17 of the Act, 29 U.S.C. § 217.

(ROA 866)  The only mention of § 216(c) in the complaint appears in the prayer for relief, which states

> WHEREFORE, cause having been shown, plaintiff prays for judgment permanently enjoining the defendants, their agents, servants, employees and all those persons in active concert or participation with them from violating the provisions of sections 6, 7, 11 of the Act, 29 U.S.C. § 206, 207, 211; *restraining the withholding of payment of minimum wages and overtime compensation found by the court to be due employees under the Act* together with interest thereon at the rate provided by 26 U.S.C. § 6621 from the date such wages became due until the date judgment is entered, and at the rate provided by 28 U.S.C. § 1961 thereafter;  *and for such other and further relief as may be necessary and appropriate,*

---

compliance with the law, except where an employee requests that an action be brought by the Secretary of Labor....  This limitation has impeded the Secretary in his efforts to enforce the act.

2 U.S.Code Cong. & Admin.News 1658 (1961).  In an effort to make investigations by the Secretary more effective by combining the power to investigate and seek injunctive relief with the power to sue for unpaid wages, Congress amended the FLSA to restore the jurisdiction of the district courts to enjoin employers from withholding back pay in actions for injunctive relief under § 217.  In exchange for restoring the Secretary's ability to seek back pay under § 217, Congress amended § 216(b) to provide that commencement of a § 217 action by the Secretary terminated the rights of individual employees to bring suit against their employers.  The Fair Labor Standards Amendments of 1961, Pub.L. No. 87-30, § 12(a), 75 Stat. 74.

While the 1961 amendments to the FLSA terminated the rights of *individual employees* to bring suit under § 216(b) upon commencement of injunctive proceedings under § 217, neither they nor any of the subsequent amendments to the FLSA preclude the Secretary from suing under § 216(c) when he brings an action for injunctive relief under § 217.  Consequently, the Secretary's ability to sue jointly under both §§ 216(c) and 217 remains intact, subject to the principle of unjust enrichment that precludes the Secretary from obtaining more than one recovery for back wage liability.

*including an additional amount as liquidated damages equal to the back wages found to be due to the employees named in attached Exhibit "A" in accordance with Section 16(c) of the Act* [29 U.S.C. § 216(c) ] and costs of this action.

(ROA 866-867) (emphasis added)  Nowhere in the complaint did the Secretary claim an entitlement to back pay damages under § 216(c) on behalf of the injured employees.

The district court denied the Secretary's request for liquidated damages and awarded back pay and prejudgment interest.  *Citing Scott-Rice,* 731 F.Supp. 776, the court concluded

> that plaintiff's failure to pursue trial by jury on this issue upon which it must obtain a verdict forgoes the power of the Court to impose any liquidated damages.  It is plaintiff's burden to obtain the verdict from the jury when liquidated damages are sought.

*Tiller,* 778 F.Supp. at 1399.

Acknowledging that liquidated damages are only available under § 216(c), the Secretary argues that the district court abused its discretion in refusing to consider his liquidated damage claim because the complaint should be read as having invoked § 217 for back pay relief and § 216(c) for liquidated damages.  Although Appellees did not demand a jury and do not argue that they lacked notice of the Secretary's demand for liquidated damages, we are not persuaded that the Secretary's claim for liquidated damages and Appellees' awareness of that claim either created the right or triggered the obligation for Appellees to demand a jury.  We find no merit in the Secretary's argument that in an action like this one seeking equit able relief under § 217, liquidated damages is "a legal remedy for which a jury trial may be convened, pursuant to section 16(c)."  (Brief for Secretary at p. 24)  For obvious reasons the Secretary neglects to tell us what a jury would decide in such a case.  Liquidated damages are by statute equal to actual damages, unless the court, exercising its discretion under the Portal-to-Portal Pay Act, reduces or eliminates the liquidated damages award.  Since the Secretary did not seek actual damages there was no issue for a jury to decide.

Because the Secretary's complaint only asked the district court to restrain Appellees from withholding back pay and never asked the court to find Appellees liable for back pay as actual damages, we conclude that the Secretary's complaint only stated an equitable claim for back pay as restitutionary injunctive relief pursuant to § 217;  it did not state a legal claim for back pay damages

under § 216(c).[12]  We conclude that where, as here, there is no right to a jury on the issue of the employer's liability for back pay damages or the amount of such damages, there is no issue for a jury to decide.  Because the Secretary is only entitled to recover liquidated damages from an employer who is found liable for back pay damages in a legal action brought pursuant to § 216(c), we also conclude that the Secretary's complaint failed to state a valid claim for liquidated damages.

If the Secretary wants to recover liquidated damages he must seek back pay as actual damages in the complaint.  Were the Secretary allowed to recover liquidated damages following a determination of back wage liability under § 217, employers would be stripped of their right to have a jury establish their liability for back pay and the amount of the back pay award.  Since liquidated damages cannot exceed the back pay award, the employer would also be stripped of his right to have the jury limit the amount of liquidated damages.  *See Superior Care,* 840 F.2d at 1064.

The complaint in this action is almost identical to those in other actions where the Secretary has similarly pleaded for injunctive relief under § 217 while injecting as an aside a reference to § 216(c) to allow the Secretary to argue for liquidated, but not actual, damages.  The Secretary's routine filing of such complaints has resulted in conflicting (and needless) case law.  *See, e.g., Deiriggi,* 985 F.2d 129 (holding that the Secretary could seek back pay under § 217 and liquidated damages under § 216(c) and that request for liquidated damages triggered defendants' obligation to demand a jury); *Superior Care,* 840 F.2d 1054 (holding that Secretary's claim for back pay pursuant to § 217 and failure to state a claim for back pay damages pursuant to § 216(c) invalidated the Secretary's claim for liquidated damages); *Scott-Rice,* 731 F.Supp. 776 (holding that the Secretary's request for liquidated damages in the prayer for relief failed to trigger defendant's right to a jury); *Solid Waste Services,* 733 F.Supp. 895 (holding that Secretary's request for liquidated damages

---

[12]In the Secretary's Pre-Trial Brief (ROA 201, 214) and Post-Trial Brief (ROA 171, 172, 189) the Secretary sought injunctive relief, not back pay damages.  In the Joint Pretrial Order the Secretary stated that "the Plaintiff seeks a restitutionary injunction against Defendants to restrain their withholding of back wages due to employees of Defendants and in [sic] additional amount as liquidated damages."  (ROA 373-374;  see also ¶ 8 at 376.)  Under our well-established jurisprudence even had the Secretary sought actual damages for back pay in the complaint, by omitting such a claim from the pretrial order, the Secretary waived it.  *E.g., Valley Ranch Dev. Co. v. FDIC,* 960 F.2d 550, 554 (5th Cir.1992).

contained in the prayer for relief triggered defendant's obligation to demand a jury). Because the *Deiriggi* and *Solid Waste Services* courts failed to consider the statutory requirements that liquidated damages can only be recovered pursuant to a finding of liability for back pay damages under § 216(c), or to explain what issue a jury could consider in a case where the Secretary fails to seek back pay as actual damages, we are not persuaded by their analysis of this issue.

Since at least 1980 courts have suggested that the Secretary avoid this issue by pleading, alternatively, for back pay damages under § 216(c) and injunctive relief under § 217. *See Marshall v. Hanioti Hotel Corp.,* 490 F.Supp. 1020, 1025 (N.D.Ga.1980). In the face of repeated warnings that the Secretary cannot do what he sought to do here—append a liquidated damage claim to an action seeking only injunctive relief—the Secretary has nevertheless persisted in doing so. We concur in the Second Circuit's critique of this practice.

> Had the Secretary wanted to be sure he could get liquidated damages, he could have amended his complaint to seek overtime wages under section 16(c). Having elected to pursue overtime wages only under section 17, and gained what he apparently thought was the advantage of avoiding a jury trial on that component of relief, the Secretary has no valid claim for liquidated damages.

*Superior Care,* 840 F.2d at 1064 (footnote omitted).

Because the Secretary's complaint only stated an equitable claim for back wages under § 217 and because defendants who are subject only to equitable liability are not entitled to jury trials, the Secretary's complaint failed either to state a claim for liquidated damages or to trigger Appellees' right to a jury trial. Thus, although for reasons different from those stated by the district court, we conclude that the district court correctly held that it was powerless to consider the Secretary's claim for liquidated damages.[13] In a case such as this where the Secretary seeks back pay solely as an element of equitable relief under § 217, a district court may not award liquidated damages but may award prejudgment interest in addition to back pay. Because the district court awarded back wages

---

[13]The district court's determination that it was powerless to consider the Secretary's claim for liquidated damages following a bench trial appears to be based on *dicta* in *Scott-Rice* that cites the holdings in a number of cases that parties to § 216(c) actions have the *right* to pursue trial by jury, for the different proposition that parties to § 216(c) *must* pursue trial by jury. *Id.* at 777-778. Because the right to pursue trial by jury can always be waived, this is not the law. Fed.R.Civ.P. 38(d).

under § 217 and prejudgment interest, the Secretary has obtained all the relief to which he is entitled.

## IV. *Willfulness*

The Secretary argues that the district court erred in holding that Appellees' violations of the FLSA were not willful and were therefore subject to a two-year, rather than a three-year, limitations period. The standard for determining willfulness is whether the employer either knew or showed reckless disregard for whether his conduct violated the FLSA. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). The district court's conclusion that the Appellees' violations of the FLSA were not willful is a finding of fact not to be set aside unless found to be "clearly erroneous." Fed.R.Civ.P. 52(a); *Cox,* 919 F.2d at 356; *Mireles,* 899 F.2d at 1416. *See also Deiriggi,* 985 F.2d at 136. Findings of fact are "clearly erroneous" when:

> although there is evidence to support [them], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*U.S. v. U.S. Gypsum,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Applying the *McLaughlin* standard for determining willfulness, the district court found that the Secretary failed to prove willfulness because the Secretary failed to present records of the previous investigation of Tiller that would allow the district court to determine whether the violations underlying those investigations were sufficiently similar to the violations underlying the present action to warrant finding that Appellees' present violations were willful. *Tiller,* 778 F.Supp. at 1400. The district court also found that after an FLSA investigation in 1982 Appellees began to keep records and to pay minimum wages and overtime, albeit improperly, and that the Secretary had not discussed, and Appellees had not asserted, the agricultural exemption during the 1982 investigation. *Id.*

After reviewing the record as a whole we agree that the Secretary failed to present any records of the 1982 investigation from which the district court could determine that the violations underlying it were substantially similar to the violations underlying this action. Moreover, because the Secretary does not dispute the district court's finding that the agricultural exemption defense raised in this action was not raised during the 1982 investigation, we are not persuaded that the district court erred in finding that Appellees' violations were not willful.

## V. *Conclusion*

Because we conclude that the off-farm tasks of loading tanks and trailers, traveling from farm to farm, and flushing of the tanks on trailers upon completion of a spraying operation are incidental to Tiller Helicopter employees' primary on-farm agricultural tasks of cultivating the soil for client farmers, we AFFIRM the district court's determination that these off-farm tasks fall within the agricultural exemption to the FLSA. Because we conclude that the Secretary failed to state a claim for back pay damages pursuant to § 216(c) of the FLSA and that absent such a claim the Secretary cannot recover liquidated damages, we AFFIRM the district court's refusal to consider the Secretary's claim for liquidated damages. Because the district court was not clearly erroneous in finding that Appellees' violations of the FLSA were not willful, we AFFIRM that finding.

. . . . .

. . . . .

. . . . .

. . . . .